# CRIMINAL CASES.

## Wytheville

### JESSIE V. COMMONWEALTH.

June 13, 1911.

1. CRIMINAL LAW—*Witnesses—Impeachment—Corroboration—Prior Similar Statement.*—Generally, what a witness said out of court cannot be given to corroborate his testimony given in court, but where the witness himself has been charged with the commission of the offense under investigation, his statements as to who was the guilty agent, made before the charge was preferred, may be received to corroborate his subsequent testimony on that subject.

2. CRIMINAL LAW—*Evidence—Reliable Testimony—Instructions.*— The jury having been clearly instructed that every material fact bearing upon the guilt of the accused must be proved beyond a reasonable doubt, he could not have been prejudiced by a further instruction "that the statement coming from any witness which they believe to be true is reliable testimony."

3. CRIMINAL LAW—*Instructions—Evidence—Guilt of Accused—Identifying Guilty Agent.*—Where there is no evidence tending to implicate any person other than the accused in the crime charged, and there is testimony as to his guilt, it is not error to refuse to instruct the jury that the accused "is not to be prejudiced by the inability of the Commonwealth to point to any other criminal agent, nor is he called upon to vindicate his own innocence by naming the guilty person."

4. CRIMINAL LAW—*Trial—Improper Comments of Prosecuting Attorney.*—The statement by the prosecuting attorney, in his address to the jury, that a witness who had been housekeeper for the accused and who had testified before the coroner's jury had been persuaded or influenced to leave the State by the accused, when there was not a scintilla of evidence to support the statement, was highly prejudicial to the accused, and the refusal of the trial court to instruct the jury to disregard it is error for which the case will be reversed.

Error to a judgment of the Corporation Court of the city of Roanoke.

*Reversed.*

The opinion states the case.

*Price & Kyle, P. H. Dillard* and *E. S. Kines,* for the plaintiff in error.

*Samuel W. Williams, Attorney-General,* for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

Plaintiff in error, John H. Jessie, was indicted in the Corporation Court of the city of Roanoke for the murder of David F. Marshall, and upon his trial was found guilty of murder in the second degree and sentenced to confinement in the penitentiary for the term of twelve years. The case is before us upon a writ of error to that judgment.

The accused was the proprietor of a lodging house in Roanoke, known as the "Tip Top Hotel," on the ground floor of which building Tate's bar-room was located. On the night of October 11, 1910, Marshall Angell and David F. Marshall, the deceased, both of whom had been drinking heavily, met in Tate's bar-room and were engaged in conversation when Jessie, the accused, came in and joined in the conversation. Marshall invited his companions to drink with him, which they did, and on demand by the bartender of pay for the liquor, after searching his pockets he remarked that he had no money, and the bar-keeper took possession of his eye-glasses. Jessie paid for his own drink.

Angell had lodged in the "Tip Top Hotel" the night before, and had engaged a room for the night in question. About fifteen minutes to 10 o'clock he left the bar-room to go to

his lodging room, and was followed by Marshall.  He was assigned to a room on the second floor, which contained a bed and sofa, and was lighted by a small electric light. Angell was an old man and a cripple, and walked with a crutch and cane.  He was the only eye-witness to the homicide, his version of which is as follows:

He says that when he and the deceased went into his room, he put his crutch under the bed, and was sitting on the side of the bed untying his shoes preparatory to retiring, when a man entered the room and said to Marshall, "You are in here bothing these women (alluding to a white woman and a negro woman employed by Jessie about the establishment) ; you have no money and you are fixing to rob this old man."  Angell remarked, "No, I haven't a cent." But the man nevertheless set upon Marshall and commenced "striking him, knocking him down on the floor, and while down kicked him several times and stamped him and struck him with his fist.  Marshall tried to get up, got about half way up, and he knocked him down and kicked him some more.  He then picked him up by the leg and arm and threw him down on the sofa and marched out of the room." Thereupon Angell called in the police, who upon examination discovered that Marshall was dead.

Angell identified the accused as the guilty party, and on cross-examination the stenographic report of his testimony, given before the coroner the day after the killing, was introduced, in which he is alleged to have stated that the man who killed Marshall did not let him see his face, and he could not identify him.  The newspapers also published an interview with Jessie, in which he was represented as saying that Angell might have been the man who committed the murder.  But on re-examination Angell testified that on the night of the homicide he told the police that Jessie killed Marshall, and his statement was corroborated by the sergeant of police and three policemen.

112

The refusal of the court to exclude these statements of Angell to the police and their substantiating evidence, constitutes the first assignment of error.

It is unquestionably the general rule that declarations of a witness made out of court are not admissible evidence for the purpose of corroborating his testimony in court, the reason for the rule being that such evidence is hearsay. *Oliver* v. *Com'th,* 77 Va. 590; *Howard* v. *Com'th,* 81 Va. 488; *Repass* v. *Richmond,* 99 Va. 508, 39 S. E. 160.

In *Oliver* v. *Com'th,* Judge Lewis, after announcing the general rule, lays down an exception to the rule, as follows: "Here the attempt by the defense was to discredit the witness by showing malice on his part, growing out of his arrest for larceny. And to repel the attack thus made, it was competent for the prosecution to prove that, prior to his arrest, the witness gave the same account of the matter that he gave on the trial. The evidence was, therefore, not hearsay, but original, the point being not the truth or falsity of the previous declarations out of court, but whether they had been made."

In *Repass* v. *Richmond,* Judge Buchanan, at p. 515, page 163 of 39 S. E., observes: "It is a general and well-nigh universal rule that evidence of what a witness said out of court cannot be received to corroborate his testimony. . . . The only exception to this rule given by Mr. Greenleaf is that, where a design to misrepresent is charged upon the witness in consequence of his relation to the party or the cause, it may be shown that he made a similar statement before the relation existed. 1 Greenleaf on Evidence, sec. 469."

So in this case it was competent for the prosecution to meet the attempt to discredit Angell by showing that he himself had been charged with the murder of Marshall, by proving that before the assertion of that charge, the witness had made the same declaration as to the guilty agent out of court that he afterwards testified to in court.

The second assignment of error is to the giving of instruction No. 10, which told the jury "that the statement coming from any witness which they believe to be true is reliable testimony."

It is not perceived how the accused could have been prejudiced by this instruction, especially when read in connection with other instructions which clearly informed the jury that every material fact bearing upon the guilt of the accused must be proved beyond a reasonable doubt.

The third assignment of error is to the refusal of the court to give instruction No. 4, namely: "The court instructs the jury that the failure of the evidence to disclose any other criminal agent than the accused is not a circumstance which may be considered by the jury in determining whether or not he was guilty of the crime wherewith he is charged. The prisoner is presumed to be innocent until his guilt is established, and he is not to be prejudiced by the inability of the Commonwealth to point to any other criminal agent, nor is he called upon to vindicate his own innocence by naming the guilty person."

This instruction, as an abstract proposition, is free from objection. The rule was so declared in *McBride's case*, 95 Va. 818, 30 S. E. 554, and such an instruction was given by the court in *McCue's case*, 103 Va. 870, 49 S. E. 623, but in both of those cases there was evidence tending to implicate some person other than the accused in the crime. In the first named case, two other parties were indicted along with McBride. It was permissible, therefore, in those cases, to inform the jury that the accused ought not to be prejudiced by the failure of the prosecution to fix the crime on some other criminal agent. But no such element was present in this case, and the rejected instruction was, consequently, irrelevant.

The fourth assignment of error takes exception to the action of the court in regard to the address of the attorney

for the Commonwealth to the jury. The record shows that a Mrs. Cody, who had been housekeeper for the accused and had testified before the coroner, at the time of the trial was absent from the State. The attorney for the Commonwealth argued that she had been persuaded or influenced to leave the State by the accused, and hence it was a fair inference that her evidence would have been detrimental to the accused. Thereupon, counsel for the defense, in reply, stated to the jury that there was no evidence before them to sustain the allegation that the accused had influenced Mrs. Cody to leave the State, and the statement of counsel that her evidence would have been detrimental to the accused was unfair, especially as she had testified before the coroner's jury, and the stenographic report of her evidence had been offered by the accused and excluded · by the court. The prosecution objected to this line of argument and requested the court to instruct the jury to disregard it, which motion the court sustained. The court, moreover, told the jury that they were to presume that its ruling in excluding the testimony of Mrs. Cody before the coroner was correct, and that they were not at liberty to consider for any purpose whatever the attempt of defendant's counsel to introduce that evidence, or to infer that it would not have been detrimental to the accused. The court also refused to instruct the jury to disregard the argument on behalf of the prosecution, to the effect that Mrs. Cody "had been persuaded or influenced to leave the State by the defendant, and it was, therefore, a fair inference to infer that her evidence would have been detrimental to the defendant."

There was not a scintilla of evidence to sustain the assumption of the attorney for the Commonwealth that the accused persuaded or influenced Mrs. Cody to leave the State. The accused was the only witness who testified on the subject, and on cross-examination stated that he had not seen Mrs.

Cody since the coroner's inquest. Continuing, the witness said: "I had nothing whatever to do with her leaving, and, in fact, did not know she was going until several days after she left."

The argument of the Commonwealth's attorney was manifestly improper in the circumstances of the case, and highly prejudicial to the accused; and the court erred in refusing his request to instruct the jury to disregard it. It is a familiar and well-settled principle of the law of evidence that, though an inference may be drawn from a fact, it cannot be drawn from a presumption. *N. & W. Ry. Co.* v. *Cromer,* 99 Va. 763, 40 S. E. 54; *C. & O. Ry. Co.* v. *Heath,* 103 Va. 64, 48 S. E. 508; *Moore Lime Co.* v. *Johnson,* 103 Va. 84, 48 S. E. 558; *Va. Iron, Coal, &c. Co.* v. *Kiser,* 105 Va. 705, 54 S. E. 889.

The fifth and last assignment of error is to the refusal of the court to set aside the verdict of the jury as contrary to the law and the evidence. As the case has to be remanded for a new trial on another ground, we shall express no opinion as to the weight or sufficiency of the evidence.

The judgment must be reversed, the verdict of the jury set aside, and a new trial had not in conflict with the views expressed in this opinion.

*Reversed.*