## Richmond

DAVID NEAL MARTIN V. COMMONWEALTH OF VIRGINIA.

April 27, 1970.

Record No. 7127.

Present, All the Justices.

*Leo R. Andrews, Jr.,* for plaintiff in error.

*A. R. Woodroof, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

David Neal Martin, the defendant, was convicted by a jury of attempted robbery, and his punishment was fixed at eighteen months in the penitentiary. The trial court approved the verdict and imposed the sentence fixed by the jury. The defendant was granted a writ of error.

The evidence shows that at approximately 2 a.m. on January 28, 1968, Robert Mason was asleep in an automobile parked on Walter Reed Drive in Arlington County. He was awakened when he "was bodily pulled out of the car," at which time he saw two men. One of the men struck him in the face four or five times. Mason asked "what the problem was." He was then struck "several more times" by the same person and was told to turn over his wallet. Mason struggled with his assailant and then was "hit from behind" with an object resembling "an antenna" in the hands of the other man. The victim was knocked to the ground, and when he got up, he "yelled for help." The two would-be robbers fled the scene.

The Arlington County Police Department received a report of a "man screaming for help on the 800 block of Walter Reed Drive." Several police cars were dispatched, and Mason was found on Walter Reed Drive with his clothing disarranged and blood on his face.

Mason gave the police a description of his assailants, and the information was broadcast over the radio. Mason immediately was taken by one of the officers, James R. Jenkins, to a nearby location where another officer had stopped an automobile occupied by three men. The men were asked to alight from the vehicle for possible identification by Mason. After he viewed the men, Mason stated that "they were definitely not the ones."

Officer Jenkins then took Mason to a location "about six blocks" from the scene of the crime. There a policeman had stopped "two subjects . . . walking down the street" who matched the description the officer "had gotten on the radio." Mason remained seated in the police cruiser some 60 feet from where the defendant was standing. The defendant was directed to step into the beam of the cruiser's headlights. When he did so, Mason said to Officer Jenkins, "That's him. The heavy one is the one who hit me from behind." Mason identified the defendant's companion, who turned out to be a Francis Fletcher, as "the other one."

The defendant and Fletcher were then charged with the attempted robbery of Mason. Fletcher was found to be wearing a coat with "what appeared to be blood stains on it." Upon analysis, the stains were shown to be blood of the same type as Mason's. Fletcher also was observed to have scratches and blood on his hands and he "appeared to have been in a fight."

At trial, Mason testified on direct examination that the defendant was the person he had identified on the night of the crime as "the

heavy set man who hit [him] in the back." However, on cross-examination, Mason was asked if he could "be sure" that the defendant "was the man who struck [him] on the night of the 28th." Mason replied, "No, I cannot." On redirect examination, Mason was asked if he had been "absolutely sure" when he identified the defendant on the night of the offense. Mason replied, "I was reasonably sure, yes."

The Commonwealth then placed Officer Jenkins on the witness stand. He testified that on the night of the crime, Mason identified the defendant as one of his assailants. Officer Jenkins pointed out the defendant in the courtroom as the same person Mason had earlier identified as the "one who hit [him] from behind."

■ The defendant first contends that the court erred in admitting evidence of Mason's identification of him. His attack here is twofold. He first argues that under *United States* v. *Wade*, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967), and *Gilbert* v. *California*, 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967), he had "the absolute right to the assistance of counsel" at the time Mason identified him on the street and that the failure of the police to warn him of his right to counsel rendered inadmissible the evidence concerning the on-street identification. He argues, secondly, that pursuant to *Stovall* v. *Denno*, 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967), the circumstances under which Mason identified him on the street were "so unnecessarily suggestive" as to deprive him of due process of law and to require exclusion of all identification evidence.

At trial, before any witness identified the defendant, the Commonwealth's Attorney advised the court that the Commonwealth proposed to "introduce identification testimony" and suggested that the matter should be considered out of the presence of the jury. The court agreed, and the jury was ordered to retire. The court heard the proposed testimony, considered the defendant's objections thereto based upon *Wade*, *Gilbert*, and *Stovall*, and ruled that the evidence was admissible. Testimony relating to both pre-trial and in-court identification was then presented to the jury.

In *Wade*, the Supreme Court held that the accused was denied his Sixth Amendment right to counsel when, following arrest and indictment and the lapse of 15 days after appointment of counsel, he was placed in a lineup in a courtroom at the county courthouse without notice to his counsel. The same ruling was made in *Gilbert* where, following arrest and indictment and the lapse of 16 days

after the appointment of counsel, the accused was placed in a lineup in an auditorium without notice to his counsel.

In *Stovall*, the accused was arrested the day following an assault committed during the course of a robbery. The day after his arrest, he was taken by the police to the hospital room of the victim who was in critical condition as the result of the assault. The police asked the victim if the defendant "was the man," and the victim identified the accused as her assailant. At trial, the victim identified the defendant in court and also was permitted to testify concerning her hospital-room identification of him.

The Supreme Court ruled in *Stovall* that the *Wade* and *Gilbert* decisions should have only prospective effect and since Stovall's pre-trial identification had occurred before the date of those decisions, the lack of counsel at the confrontation did not invalidate his conviction. However, the court considered as a recognized ground of attack, independent of the question of right to counsel, a contention that the hospital-room confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the accused] was denied due process of law." In ruling that the identification of Stovall was not lacking in due process because "an immediate hospital confrontation was imperative," the court stated that a determination of alleged illegality of a single-suspect confrontation "depends on the totality of the circumstances surrounding it." 388 U.S. at 302, 87 S. Ct. at 1972, 18 L. Ed. 2d at 1206.

In the wake of the *Wade*, *Gilbert*, and *Stovall* decisions, a spirited debate has waged over the breadth and scope of their applicability. This is so because the language employed by the Supreme Court in those decisions suggests that the applicability is not limited to the factual situations there presented. For example, in *Wade*, the court said that its prior right-to-counsel decisions required it to "scrutinize any pretrial confrontation of the accused to determine whether presence of his counsel is necessary." In *Gilbert*, the court discussed the necessity of a per se exclusionary rule as a sanction against "lineups as presently conducted." And in *Stovall*, the court observed that the "practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned."

The Supreme Court itself has not clarified the meaning of its holdings in *Wade*, *Gilbert*, and *Stovall*. However, decisions of lower appellate courts, both state and federal, have almost unanimously rejected the proposition that the *Wade-Gilbert-Stovall* trilogy requires

the presence of counsel at every witness-suspect confrontation or prohibits any single-suspect identification.

Typical of those cases so interpreting the *Wade-Gilbert* decisions is *Russell* v. *United States*, 408 F.2d 1280 (D.C. Cir. 1969), *cert. denied*, 395 U.S. 928, 89 S. Ct. 1786, 23 L. Ed. 2d 245, involving charges of burglary and larceny. There, at daybreak, a witness heard the sounds of a blaring radio and breaking glass. He stationed himself across the street from a shoe shine shop and observed the radio "sitting on the sidewalk" outside the broken window of the shop. He saw the accused emerge from the shop and proceed up the street. The witness went to a nearby police station and reported the incident. A radio lookout was broadcast and the accused was promptly apprehended by the police. He was returned to the scene of the crime where the witness identified him as the man seen emerging from the shop.

At Russell's trial, testimony was admitted concerning both pretrial and in-court identification of the accused. On appeal, the court held that the *Wade-Gilbert* rule did not apply because "it is not improper for the police immediately to return a freshly apprehended suspect to the scene of the crime for identification by one who has seen the culprit minutes before." 408 F.2d at 1284.[1]

Typical of the cases limiting the application of the *Stovall* decision is *Bates* v. *United States*, 405 F.2d 1104 (D.C. Cir. 1968), involving charges of housebreaking and assault with a deadly weapon. There, the accused entered an apartment occupied by two women and at knife point "committed indecent assaults" upon one of them. The assaulted woman's screams caused the accused to flee and also attracted the attention of a policeman who was in the neighborhood. The officer observed a man running from the apartment house, gave chase, and lost sight of the culprit. Later, several other officers who were in the vicinity saw the accused and tried unsuccessfully to apprehend him. Finally, another officer apprehended the accused on the porch of a house. The accused was returned to the scene of the crime and placed alone in a patrol wagon where he was identified by the woman who had been assaulted. The identification took place approximately one-half hour after the offense had occurred.

---

[1] One appellate decision which seemingly is contrary to the view expressed in *Russell* is *Rivers* v. *United States*, 400 F.2d 935 (5th Cir. 1968), where a pre-trial identification of an accused without counsel was held to violate *Wade-Gilbert*. However, pertinent to our inquiry here is the court's observation in *Rivers* that when the pre-trial identification was made, a "significant lapse of time had passed since" the occurrence of the offense. 400 F.2d at 940.

In an opinion by Judge Burger, now Chief Justice of the United States, the court rejected the claim that the patrol-wagon identification of the accused was "unnecessarily suggestive" under *Stovall*. The court stated that "[t]here is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup' when this occurs near the time of the alleged criminal act." 405 F.2d at 1106. The court further said:

". . . [T]he police action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is still fresh. . . ." 405 F.2d at 1106.

In *Buchanan* v. *Commonwealth*, 210 Va. 664 (1970), this day decided, the accused was identified by the victim in a lineup held twelve hours after occurrence of the offense and before appointment of counsel and indictment. We held that *Wade* and *Gilbert* were inapplicable and that the accused was denied no constitutional right by the absence of counsel at the lineup.

Here, the on-street identification of the defendant and Fletcher by Mason took place "about six blocks" from the scene of the crime and only "fifteen or twenty minutes" after the offense occurred. The identification was the early culmination of a prompt on-the-spot investigation which led first to the immediate release of innocent persons as suspects and then without delay to the apprehension of the guilty culprits.

There was nothing unnecessarily suggestive about the identification of the defendant by Mason. The latter testified at the exclusionary hearing that prior to the time he identified the defendant and Fletcher, the police said nothing to him "concerning either of these two men." Mason did testify that when he identified them, he "assumed" they were "suspects" who had been "arrested." But the record shows affirmatively that Mason spontaneously identified the defendant, saying, "That's him. The heavy one is the one who hit me from behind."

Under the circumstances in this case, the police were not required to see that counsel was present at the on-street identification of the defendant or to warn him that he was entitled to have counsel present

at the confrontation. There was nothing "so unnecessarily suggestive" about Mason's identification of the defendant that the latter was denied due process of law. Thus, whatever may be the applicability of the *Wade, Gilbert,* and *Stovall* cases, the rulings there enunciated simply do not apply to the situation now before us.

■ The defendant finally contends that the evidence was insufficient to prove beyond a reasonable doubt his identity as one of the participants in the offense against Mason. The defendant relies upon the concession by Mason that he could not "be sure" of his in-court identification and upon the admission by Mason that he had been only "reasonably sure" of his pre-trial identification of the defendant.

We believe the question of the defendant's identity was properly submitted to the jury. The applicable rule, which the defendant recognizes, is that evidence of a pre-trial identification is admissible and may be sufficient to overcome deficiencies existing in an in-court identification. See IV Wigmore on Evidence § 1130 (3rd ed. 1940) and the cases there cited.

It is true that Mason could not "be sure" of his in-court identification of the defendant and vacilated about how "sure" he had been of his pre-trial identification. But other evidence showed clearly that Mason did make a positive identification of the defendant immediately following the offense and that the person on trial was the one so identified. This evidence was not incredible and, when considered with all the other circumstances in the case, was sufficient to support the jury's finding that the defendant was one of the persons who attempted to rob Mason.

We find no error in the judgment of which the defendant complains. Accordingly, the judgment will be affirmed.

*Affirmed.*