**Earl Hunter HOOVER, Petitioner,**

v.

**A. E. SLAYTON, Jr., Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 71–C–59–H.**

United States District Court,
W. D. Virginia,
Harrisonburg Division.

April 17, 1972.

**318**

Gilbert W. Haith, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, District Judge.

Pursuant to 28 U.S.C. § 2241, Earl Hunter Hoover petitions this court for a writ of habeas corpus to terminate his alleged illegal confinement in the Virginia state prison system.

Hoover was convicted of attempted rape in the Circuit Court of Augusta County on December 4, 1963, and sentenced to a thirty year term in the Virginia State Penitentiary. The conviction resulted from a jury trial at which petitioner represented by court appointed counsel pleaded not guilty.

In this petition Hoover alleges that the pre-trial identification confrontations were so impermissibly suggestive and conducive to irreparable mistaken identification as to deprive him of due process of law. Petitioner asserted this claim on habeas corpus to the Circuit Court of Augusta County, which denied his petition after a plenary hearing. The dismissal was affirmed by the Supreme Court of Virginia. Having presented his claim to the state's highest court, he has exhausted his available state remedies in compliance with 28 U. S.C. § 2254 as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837 (1963).

The following material facts appear from the record. At approximately 6:00 p. m., August 30, 1963, Hoover approached Mildred Randolph, age 12, and asked her to look after his children that evening at his home. Mildred replied that she must first obtain permission from her mother. Together they walked to a nearby house, owned by Mary Diehl,

a 78 year old chiropractor, and received permission to use the telephone. After speaking briefly with Mildred, Mrs. Eva Randolph, Mildred's mother, conversed with petitioner, who introduced himself as "Mr. Hoover". Miss Diehl had no knowledge of the conversation, because she had returned to a patient in another part of the house. Having obtained permission Hoover and the girl drove away in his car.

Later that evening Mildred appeared, nude, at the home of Ward Rankin about a quarter mile from the wooded area where the rape occurred. Rankin gave Mildred some clothes to wear and called the Augusta County Police, but did not question the girl about the crime.

Responding to his call Sheriff Kent and Deputy Harris went to Rankin's home, talked briefly with Mildred and then accompanied her to the nearby woods, where they found her clothes and a man's shirt. After their visit to the scene the officers took Mildred to her mother, and they all went to King's Daughter's Hospital. During this period Mildred identified her assailant by name and also described his car as a small cream-colored foreign convertible. The car, a Hillman, of which there were only two in the Staunton-Augusta area, was found on Middlebrook Road near the wooded area.

Meanwhile the description of the car, registered in Hoover's name, led to the search for him. Lt. Wolfenbarger of the Staunton Police and Trooper Franklin of the State Police found him at his home. At their request he agreed to go with them to the Hospital to present himself for identification by Mildred Randolph. The three men were met at the Hospital by Mildred and Deputy Harris, who then asked her, "Was this the boy?" She replied that he was. Petitioner was then taken to the Sheriff's Office where he was charged with rape.

The next morning Sheriff Kent and a deputy took Hoover to the home of Mary Diehl. While he stood between the uniformed officers in front of Miss

Diehl's home, she was called to the front porch to identify him. She stated, "It looks like the man (who used her telephone) but I could not say positively; I don't know". She testified similarly at the trial.

■ Although the "practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned", Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967), the practice is not *ipso facto* constitutionally void. Rather the test is whether under the totality of the surrounding circumstances the single suspect confrontation, or "showup", was "so unnecessarily suggestive and conducive to irreparable mistaken identification that (the accused) was denied due process of law." [1] Id. See Palmer v. Peyton, 359 F.2d 199 (4th Cir. 1966).

■ There was no compelling reason for the failure of the police to conduct a lineup; nevertheless the record before the court does not indicate that the identification procedures violated due process. Mildred Randolph identified petitioner clearly and without hesitation at the hospital no more than three hours after the crime occurred. See generally Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104 (1968); Martin v. Commonwealth, 210 Va. 686, 173 S.E.2d 794 (1970). She further noted at the preliminary hearing that he was not wearing the same clothes he wore earlier the same evening. Rankin observed that Mildred appeared nervous and upset, as might be expected, but at no time was she "hysterical" or in tears nor was she in any apparent physical pain at the hospital. There was nothing about peti-tioner's appearance or the officers' actions to cue the girl to inculpate petitioner. Moreover, prior to the identification, the police quickly located petitioner because of her description of his car and because she identified him by name. Finally Mildred had ample opportunity—at least 30 minutes—to observe Hoover in daylight prior to and during the attempted rape and in part before she apprehended any danger.

■ The court is also persuaded that the potential danger of susceptibility to police suggestion attending the procedure by which Hoover was identified by Mary Diehl is offset by the nature of her identification. The confrontation occurred less than 18 hours after petitioner came to her home. There is no indication that she knew prior to her identification for what crime the man presented to her had been arrested. She was, therefore, a disinterested onlooker who suffered no pressure from understandable outrage to link this man with a particular crime, as might be the case with an involved eyewitness. Gregory v. United States, 133 U.S.App.D.C. 317, 410 F.2d 1016 (1969) cert. den. 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119. Most important the uncertainty expressed in her identification was perpetuated throughout the trial proceedings. This uncertainty, coupled with the strength of Mildred's identification, rendered her testimony much less crucial to the case than was Mildred's. Thus under all of the circumstances of this case, the court finds that the petitioner's rights were not violated.

In light of the above, it is ordered and adjudged that the petition for a writ of habeas corpus be dismissed.

---

1. Petitioner does not claim that counsel should have been present at the confrontations. In any case no right to counsel existed since the procedures here preceded United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).