## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

BILLY WAYNE NIBLETT v. COMMONWEALTH OF VIRGINIA.

June 11, 1976.

Record No. 750979.

Present, All the Justices.

*Howard J. Beck, Jr. (Ford, Swezey & Beck*, on brief), for plaintiff in error.

*Jim L. Chin, Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

*Amicus Curiae*: Commonwealth's Attorney's Office for the City of Martinsville (J. Randolph Smith, Jr., Assistant Commonwealth's Attorney, on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

Billy Wayne Niblett was tried by a jury and found guilty under two indictments for armed robbery and one indictment for wounding another while in the commission of a felony. His punishment was

fixed at confinement in the State Penitentiary for five years on each of the armed robbery convictions and for one year on the felonious wounding conviction. The trial court entered judgment on the verdict. We granted Niblett a writ of error limited to the question whether the testimony of a third person as to an out-of-court pretrial photographic identification of Niblett by two eyewitnesses was inadmissible as evidence.

On June 20, 1974, shortly before 10:00 a.m., in the City of Martinsville, two men, one armed with a pistol, the other carrying a shotgun, robbed Hite's Service Station and one of its occupants. In the station at the time were D. M. Norman, Thomas Murray, and Everette Hensley, each of whom was approximately 76 years of age. Norman was struck in the head by the robber who held the pistol. The robbers escaped in an automobile which, on information furnished by a witness, was soon found by the police. Discovered in the vehicle was a photograph of one Kim Williams, and this photograph and five others, including one of Niblett, were displayed by Detective T. E. Ussery before Murray within one hour after the robbery. From the photographs Murray identified Williams and Niblett as the robbers. Later in the day, after Norman had received medical attention, the same photographs were exhibited to him, and he also identified Williams and Niblett as the culprits.

At trial Norman and Murray testified as witnesses for the Commonwealth. Norman testified that Niblett looked "very much like" the man who held the pistol on him at the service station, but that he did not know "for sure" because of the man's changed appearance. On cross-examination it was disclosed that Norman had failed to identify Niblett in a police lineup conducted several months after the robbery, and at that time had identified as his assailant another man who had no connection with the crime. On redirect examination Norman testified that Detective Ussery had shown him photographs on the day of the robbery and that he had informed the officer that one of the photographs "looked very much like" the man with the pistol.

Murray did not identify Niblett at trial. He testified that in the police lineup he had identified the robber with the shotgun but that he could not identify the other robber, whose face he never saw. On cross-examination Murray testified that he could not identify Niblett as one of the robbers, and that Niblett was too darkskinned to be the man whom he saw with the shotgun, although he might have been

the "one that robbed Mr. Norman." The witness was not questioned on either direct or cross-examination about his identification of Niblett from photographs.

Over objection by defense counsel, Detective Ussery was permitted to testify that on the day of the robbery he had exhibited six photographs, first to Murray and later to Norman, from which each witness had independently identified Niblett and Williams as the robbers. The trial court, however, refused to permit Ussery to testify as to any identification made by Hensley, the third occupant of the service station when the robbery occurred, who was not available as a witness.

Kim Williams, a witness for the Commonwealth, testified that he and Niblett were the robbers, and that he was the one armed with a sawed-off shotgun while Niblett was the one with a pistol.

Although our cases do not furnish the complete answer to the precise question now under consideration, they have established a climate favorable to the admissibility of various kinds of identification evidence.

In *Jessie's Case*, 112 Va. 887, 71 S.E. 612 (1911), a witness identified the defendant by in-court identification as the murderer of the decedent. On cross-examination the record of a coroner's inquest was introduced which revealed that the witness had testified that he had not seen the murderer and could not identify him. On redirect examination the witness testified that on the night of the murder he had told the police that the defendant was the murderer. Four police officers corroborated this testimony. Acknowledging the general rule that evidence of a prior consistent out-of-court statement is inadmissible hearsay, we held the evidence admissible under an exception that provides that where a design to misrepresent is charged upon the witness in consequence of his relation to the party or the cause, (*e.g.*, in this case, the witness himself, at one point, had been charged with having murdered the decedent), it may be shown that the witness made the same statement before the relation existed. More recently, we have held unqualifiedly that a prior consistent statement of a witness is admissible after the witness's testimony has been attacked by the admission of a prior inconsistent statement. *Clere* v. *Commonwealth*, 212 Va. 472, 473, 184 S.E.2d 820, 821 (1971). *See also Skipper* v. *Commonwealth*, 195 Va. 870, 876, 80 S.E.2d 401, 405 (1954).

Testimony by another that the victim had identified the defendant from photographs viewed two days after the crime was objected to

as hearsay in *Lesoine v. Commonwealth*, 209 Va. 399, 164 S.E.2d 642 (1968). On appeal, however, the hearsay objection was not argued, and the admissibility of the evidence was attacked only on the ground that the photographic array was impermissibly suggestive, a contention which we rejected.

In *Martin v. Commonwealth*, 210 Va. 686, 173 S.E.2d 794 (1970), a witness identified the defendant in court. On cross-examination the witness expressed uncertainty as to his identification but on redirect examination he testified that he was positive that the defendant was one of his assailants. A police officer testified that on the night of the crime the witness had identified the defendant in a one-on-one confrontation. In holding that the question of the defendant's identity was properly submitted to the jury, we recognized "[t]he applicable rule . . . that evidence of a pre-trial identification is admissible and may be sufficient to overcome deficiencies existing in an in-court identification." *Id.*, 210 Va. at 692, 173 S.E.2d at 799.

The complaining witness in *Drewry v. Commonwealth*, 213 Va. 186, 191 S.E.2d 178 (1972), was not asked at trial to identify the defendant. At a pretrial lineup, after the defendant's appearance had greatly changed, the witness had identified the defendant's brother, whose appearance resembled that of the defendant at the time of the crime. However, evidence was admitted, over defendant's objection, of a photographic identification of the defendant made by the witness about three weeks prior to the lineup. As in *Lesoine, supra,* on appeal the only challenge to the admissibility of the evidence of photographic identification was on the ground of impermissible suggestiveness, an argument which we held to be without merit.

There is a division of authority on the admissibility of testimony by a third person as to pretrial identification of an accused. *See* Annot., 71 A.L.R.2d 449 (1960), for a comprehensive discussion of the subject. Niblett asks us to follow *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. 1972). There, a witness made a courtroom identification of the defendant, and testified concerning an extrajudicial identification. A police officer, over defendant's objection, was permitted to testify that the witness had identified the defendant shortly after the crime from photographs and again in a lineup. The Supreme Court of Missouri held that, absent impeachment of the identifying witness's testimony, the corroborating testimony of the police officer was inadmissible.

Niblett also relies on *People v. Caserta*, 19 N.Y.2d 18, 224 N.E.2d

82 (1966), and *People* v. *Townsend,* 111 Ill. App.2d 316, 250 N.E.2d 169 (1969).

In *Caserta,* the Court of Appeals of New York held that by statute a witness was permitted to testify that he had previously confronted and identified an accused. After his identification testimony had been attacked on cross-examination, however, the witness was not permitted to testify that he had previously identified the accused by photographs. Nor was a third person permitted to testify that he had observed the witness identify the defendant.

In *Townsend,* a witness made an in-court identification of the accused, and a police officer testified that the witness made an out-of-court identification from photographs of the same man. On appeal, this corroborative testimony was held to be inadmissible. To the same effect is *People* v. *Coleman,* 17 Ill. App.3d 421, 308 N.E.2d 364 (1974), although the Illinois court held that where the hearsay testimony is merely cumulative or is supported by a positive identification or by other corroborative circumstances it constitutes harmless error. *Id.* at 369. However, in *People* v. *Ford,* 21 Ill. App.3d 242, 315 N.E.2d 87 (1974), and *People* v. *Warren,* 32 Ill. App.3d 218, 336 N.E.2d 557 (1975), it was held that testimony of a third person as to an out-of-court identification by a witness is admissible if the witness is present at trial, testifies to the extrajudicial identification, and is subject to cross-examination. Moreover, in *People* v. *Denham,* 33 Ill.2d 599, 213 N.E.2d 539 (1966), the Supreme Court of Illinois held that it was proper to admit into evidence the testimony of a police officer as to identification of the accused by a witness at a show up, after the identifying witness had made an in-court identification of the accused. *See also People* v. *Killebrew,* 55 Ill.2d 337, 303 N.E.2d 377 (1973).

Niblett argues that the testimony of a third person as to an extrajudicial identification by a witness should be admitted only to rehabilitate the witness, if his testimony has been impeached, or to corroborate an in-court identification made by the witness. There is substantial authority, however, supporting less restrictive admissibility of third person testimony concerning out-of-court identification by a witness. *See* McCormick on Evidence, § 251 (2d ed. Cleary, et al., 1972). In *Gilbert* v. *California,* 388 U.S. 263, 272, n. 3 (1967), it is said:

"There is a split among the States concerning the admissibility of prior extrajudicial identifications, as independent evidence of

identity, both by the witness and third parties present at the prior identification. See 71 A.L.R.2d 449. It has been held that the prior identification is hearsay, and, when admitted through the testimony of the identifier, is merely a prior consistent statement. The recent trend, however, is to admit the prior identification under the exception that admits as substantive evidence a prior communication by a witness who is available for cross-examination at trial. . . . That is the California rule. In *People* v. *Gould*, 54 Cal.2d 621, 626, 354 P.2d 865, 867, the Court said:

'Evidence of an extra-judicial identification is admissible, not only to corroborate an identification made at the trial (*People* v. *Slobodion*, 31 Cal.2d 555, 560, [191 P.2d 1]), but as independent evidence of identity. Unlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached* * * evidence of an extrajudicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. . . . The failure of the witness to repeat the extra-judicial identification in court does not destroy its probative value, for such failure may be explained by loss of memory or other circumstances. The extrajudicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination.' New York deals with the subject in a statute. See N.Y. Code Crim. Proc. Sec. 393-b."

Where the witness who identified the accused out-of-court is available as a witness, so as to afford the accused the rights of confrontation and cross-examination, the dangers sought to be avoided by the hearsay rule are absent and the testimony of a third person as to the extrajudicial identification has been held to be admissible. *Johnson* v. *State*, 237 Md. 283, 290-91, 206 A.2d 138, 143 (1965). The Supreme Judicial Court of Massachusetts, expanding its earlier rule that pretrial identification is admissible only in conjunction with an in-court identification, now holds that even if the witness does not identify the defendant in court, any pretrial identification of the defendant by the witness is admissible for probative purposes if the

defendant's Sixth Amendment right of confrontation is satisfied. *Commonwealth* v. *Torres*, 327 N.E.2d 871 (Mass. 1975). In that case, the blind victim testified to a voice identification of the defendant made by her at a preliminary hearing. Furthermore, in *State* v. *Kevil*, 111 Ariz. 240, 527 P.2d 285 (1974), it was held that testimony of a police officer as to the victim's extra-judicial identification of a co-defendant was admissible although the victim, because of memory failure, could not make an in-court identification.

An identification made by a victim or an eyewitness soon after a crime has been committed may be more objective and accurate and have greater probative value than one made later in court when unduly suggestive circumstances, if present, or the changed appearance of the defendant, might adversely affect the identifier's testimony. Moreover, the memory of a witness may fade, particularly when, as in this case, the witness is elderly. It is also not beyond the realm of possibility that an identifying witness may be inhibited by threat or intimidation from making a positive in-court identification. Accordingly, we agree with the reasoning of those courts which have approved the broad admissibility of identification evidence. *See*, for example, *United States* v. *Anderson*, 406 F.2d 719 (4th Cir. 1969), where two witnesses who could not make an in-court identification were permitted to describe a pretrial lineup. A police officer was then allowed to testify that the man whom the two witnesses identified in the lineup was the defendant. To the same effect is *State* v. *Wilson*, 38 Wash.2d 593, 231 P.2d 288 (1951).

In the present case, Detective Ussery's testimony concerning Norman's pretrial photographic identification of Niblett was admissible under the guidelines established in *Martin* v. *Commonwealth*, *supra*, 210 Va. 686, 173 S.E.2d 794. Here, as in *Martin*, the witness made a weak in-court identification which, after having been attacked on cross-examination, was corroborated by the police officer present during the out-of-court identification by the witness. Moreover, Norman also testified to the out-of-court display of photographs from which he made identification. We agree with the Attorney General that Ussery's testimony as to Norman's photographic identification was admissible even under the standards set forth in *State* v. *Degraffenreid*, *supra*, 477 S.W.2d 57, upon which Niblett has relied so strongly.

Detective Ussery's testimony, however, does not corroborate that of Murray, who was unable to make even a weak in-court iden-

tification of Niblett, although he testified that Niblett "might have been" the man who robbed Norman. Murray asserted that he had never seen Niblett's face, and he was not questioned as to any photographic identification. Nevertheless, under the facts of this case, we hold that Ussery's testimony concerning the photographic identification made by Murray was admissible.

As we stated in *Martin*, deficiencies in courtroom identifications may be overcome by evidence of extrajudicial identifications. Here, where there were deficiencies in Norman's courtroom identification of Niblett, Detective Ussery's testimony as to the photographic identification by Murray, as well as to that made by Norman, was admissible for the purpose of overcoming these deficiencies. Since Murray, like Norman, was present in court and available for cross-examination, no question arises concerning Niblett's right to confront the witnesses against him. The testimony of Ussery, therefore, was properly admitted as evidence against Niblett, to be considered and weighed by the jury with the other evidence in the case.

The judgment of the trial court will be affirmed.

*Affirmed.*