CHRISTOPHER LEE ELLIS

v.

COMMONWEALTH OF VIRGINIA

No. 1758-92-4

Decided May 17, 1994

COUNSEL

Ann B. Vance (Brooks & Vance, on briefs), for appellant.

Kathleen B. Martin, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.**—Christopher Lee Ellis (appellant) appeals his bench trial conviction by the Circuit Court of Loudoun County (trial court) for robbery. Appellant contends that the trial court erroneously admitted and considered hearsay evidence spoken out of court by a witness and related in court by an investigating police officer. In addition, he asserts that the evidence was insufficient to support his conviction. For the reasons that follow, we affirm.

█ Upon familiar principles, when the sufficiency of the evidence is challenged, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). In a bench trial, the finding of the trial judge "upon the credibility of the witnesses and the weight to be given their evidence, stands on the same footing as the verdict of a jury, and unless that finding is plainly wrong, or without evidence to support it, it cannot be disturbed." *Lane v. Commonwealth*, 184 Va. 603, 611, 35 S.E.2d 749, 752 (1945). On appeal, "[a]ll evidence of the accused which is in conflict with the Commonwealth's evidence must be discarded, and all credible evidence of the Commonwealth must be regarded as true." *Boblett v. Commonwealth*, 10 Va. App. 640, 651, 396 S.E.2d 131, 137 (1990).

The record discloses that on the afternoon of June 15, 1991, Margaret Thompson (victim) was accosted by a black male outside a Giant Food Store (Giant) and her white purse containing $89 was taken. Victim was unable to further describe or identify this male. Warren Lewis (Lewis) was in Giant's parking lot, heard victim's screams, saw a young black man running with a white purse between Giant and K-Mart and into a field, where he lost sight of the runner for a few minutes. Shortly thereafter, Lewis saw the man running toward Loudoun House apartments

and entering the second building. Lewis then drove behind Giant and walked into the field in which he had seen the man run. There he found and retrieved victim's purse and wallet from a drain sewer and gave them to Giant's manager. Lewis did not see any other persons in the area and was unable to identify the robber.

Eric Cyrek (Cyrek), a Giant employee, also ran around the side of Giant after victim informed him of the theft. Cyrek saw three teenage girls and asked if someone had run past. The girls whispered among themselves that they thought they had seen appellant run past them. Cyrek knew appellant and had seen him in Giant earlier that afternoon.

Ruth Ann Renzy (R. Renzy), her sister Octavia Marie Renzy (M. Renzy), and Dawn Costello (Costello), were walking on the path behind Giant when a young black male ran past them with a white purse. The girls kept walking and did not see where the man went. At trial, the girls testified differently about their conversation with Cyrek. R. Renzy testified that she could not positively identify the man. M. Renzy knew appellant and stated that all three told Cyrek that the man who ran by looked like appellant. She also testified that she knew another person who resembled appellant, called "Scarface." Costello did not know appellant and said that the man was "red-skinned" and that either R. Renzy or M. Renzy responded to Cyrek's question, but not her.

Officer Gary L. Gaither (Gaither) investigated the robbery. He interviewed R. Renzy on June 16, one day after the robbery. Over appellant's objection, Gaither testified that R. Renzy identified appellant as the person she had seen on the day of the crime and that he had a white purse in his possession. The trial court only admitted the reference to appellant as a "positive identification."

Appellant testified that he worked for a fencing company, earning $250 a week. He denied robbing victim. Appellant said that he spent June 15 playing basketball at the community center, doing laundry, and visiting. He admitted knowing M. Renzy but denied seeing any of the three girls on June 15. Appellant stated that he went to Giant on a daily basis. Appellant had two prior felony convictions as well as a conviction for a crime of moral turpitude and admitted that another conviction would violate his probation, causing him to incur additional prison time. Appellant's sister testified that she had seen appellant at home on the day of the theft

but conceded that there were times when he was out of her sight.

After the trial court declared the evidence sufficient to prove appellant's guilt beyond a reasonable doubt and found appellant guilty as charged, appellant moved to set aside the verdict on the ground that R. Renzy had not told Officer Gaither that she had seen appellant on the crime date. Permission to present further testimony was granted. After some difficulty, R. Renzy was located and testified that she had not told Gaither that she was certain that she had seen appellant, only that the person she had seen looked like appellant. On cross-examination by the Commonwealth, she noted that appellant had a reputation for fighting.

The Commonwealth rebutted R. Renzy's post-trial testimony by introducing Gaither's investigation report that contained the following:

Ruth Renzy advised this officer that she witnessed black male Christopher Ellis with a white purse in the field area between Loudoun House apartment complex and Giant Food Store.

The trial court denied the motion to set aside the verdict and reaffirmed that Gaither's report of R. Renzy's out-of-court statement was admissible.

Citing *Niblett v. Commonwealth*, 217 Va. 76, 225 S.E.2d 391 (1976), the trial court permitted Officer Gaither to testify that R. Renzy, on the day following the crime, had told him that on the day before, she observed appellant shortly after the offense, running from the direction of Giant, and that he had a white pocketbook in his possession. That ruling followed R. Renzy's in-court testimony, which was, in relevant part, as follows:

Q. But you did, at that time, make a statement, some statement to the officer?

A. Yeah, I did. I told him that we were walking, and that I did see someone run by with a purse, and that was it.

Q. Let me just stop you right here. You said a purse?

A. Yeah, a purse.

Q. Did you see what color the purse was?

A. The purse was white.

Q. I'm sorry, go ahead. You saw somebody with a purse?

A. I told the officer that we were walking, and someone ran by with a white purse, and they ran right past us, and I didn't really get a positive ID on the face.

Q. Did you see him from the side?

A. Yeah. I mean, not really good because they were running by.

Q. What time of the day or night was this?

A. It was in the afternoon. It was after 12:00 sometime.

Q. It was daylight, bright daylight? This was in June.

A. Daylight.

Q. It wasn't raining or anything like that?

A. No. It was a sunny day.

Q. And you say the person ran right by you. Are you talking about a matter of feet in terms of how close they came to you?

A. I was on the further side, and they ran. They were like about from you to me, maybe.

Q. The distance between you and I [sic]?

A. Right.

MR. STROM: For the record, Judge, I would say that's eight feet maybe.

MR. VANCE: No objection.

THE COURT: Let the record show it's about eight feet.

Q. And the officer who interviewed you, was that Officer Gaither of the Leesburg Town Police at that time?

A. Yes, sir.

Q. Did there come a time that a Giant employee, after the person ran by with the purse, came around the corner and inquired about this person?

A. Yes.

Q. Did you know who that Giant employee was?

A. It's Eric Cyrek.

Q. Do you recall what he said?

A. He asked us if we had seen anyone, and if we had, did we know who it was. And I told him exactly this, I said that yes, I did see someone run by; no, I didn't know who it was.

In *Niblett*, a writ of error was granted by the Supreme Court "limited to the question whether the testimony of a third person as to an out-of-court pretrial photographic identification of Niblett by two eyewitnesses was inadmissible as evidence." 217 Va. at 77, 225 S.E.2d at 391. Niblett and a co-defendant, Kim Williams, were charged with armed robbery and wounding another while in the commission thereof. They escaped in an automobile, which was found soon after by the police. The vehicle contained a photograph of Williams and five other photographs, including one of Niblett. Within one hour of the robberies, those photographs were shown to Murray, a witness to the crimes. Murray selected photographs of Niblett and Williams as the robbers. Later that day, the same array of photographs was shown to Norman, another witness to and victim of the crimes. Norman also selected the pictures of Niblett and Williams as the persons who committed the robberies. At trial, Norman testified that Niblett looked "very much like" one of the robbers but that he did not know "for sure." *Id.* In addition, at trial, the evidence showed that Norman not only had been unable to select Niblett from a police line-up conducted several months after the robbery but, at that time, he had identified a man who had no connection to the crimes. Moreover, at trial, Norman testified that he had only told the officer that one of the photographs "looked very much like" the man who held the pistol on him during the robbery. Murray did not identify Niblett at trial but said that he might have been the "one who robbed Mr. Norman." *Id.* at 77-78, 225 S.E.2d at 392. An investigative detective was permitted to testify that on the day of the robbery he had shown the photographs to Murray and Norman and from those pictures Murray and Norman, independently, had identified Niblett as one of the robbers. *Id.* at 78, 225 S.E.2d at 392.

■ After a review of sister state opinions on the issue stated, the *Niblett* Court said:

Where the witness who identified the accused out-of-court is available as a witness, so as to afford the accused the rights of confrontation and cross-examination, the dangers

sought to be avoided by the hearsay rule are absent and the testimony of a third person as to the extrajudicial identification has been held to be admissible.

An identification made by a victim or an eyewitness soon after a crime has been committed may be more objective and accurate and have greater probative value than one made later in court when unduly suggestive circumstances, if present, or the changed appearance of the defendant, might adversely affect the identifier's testimony. Moreover, the memory of a witness may fade, particularly when, as in this case, the witness is elderly. It is also not beyond the realm of possibility that an identifying witness may be inhibited by threat or intimidation from making a positive in-court identification. Accordingly, we agree with the reasoning of those courts which have approved the broad admissibility of identification evidence.

*Id.* at 81-82, 225 S.E.2d at 394; *see also Martin v. Commonwealth*, 210 Va. 686, 173 S.E.2d 794 (1970); *Commonwealth v. Torres*, 327 N.E.2d 871 (Mass. 1975); *State v. Wilson*, 231 P.2d 288 (Wash.), *cert. denied*, 392 U.S. 855 (1951); *Johnson v. State*, 206 A.2d 138 (Md. 1965). Although some states have held to the contrary, the recent trend is to admit evidence of a prior, out-of-court identification under the exception to the hearsay rule when the declarant is available for cross-examination at trial. *People v. Gould*, 354 P.2d 865, 867 (Cal. 1960).

In the case before us, after viewing appellant the day of the crime, R. Renzy made a positive identification of appellant the next day. However, at the trial, held nine months later, R. Renzy made an equivocal in-court identification and testified that the man who ran by her, carrying the purse, "looked like him [appellant]." She was available for cross-examination by appellant's counsel. We hold that pursuant to the aforementioned authorities, the trial court did not err by permitting Officer Gaither to testify as to the out-of-court identification made by the witness, R. Renzy, when Gaither interviewed her the day following the commission of the crime.

Appellant further argues that the evidence is insufficient to identify him as the criminal agent. The evidence discloses that shortly before the theft, appellant was seen in the store at which

victim's purse was stolen; that the thief was a black male who took a white purse from victim; that a black male was seen running, with a white purse, away from the store; that the purse was found in a field behind the store; that three witnesses saw a black male, "who looked like" appellant, running with a white purse, past them, as they walked toward the store; and that appellant was identified as the person running with a white purse. We find that evidence sufficient to support the finding of the trial court.

Accordingly, the judgment is affirmed.

*Affirmed.*

Fitzpatrick, J., concurred.

Barrow, J., dissenting.

The principle expressed in *Niblett v. Commonwealth*, 217 Va. 76, 225 S.E.2d 391 (1976), is not, in my opinion, applicable to this appeal. *Niblett* addresses the admissibility of the observations of one who witnesses an out-of-court identification. *Id.* at 78, 225 S.E.2d at 392. The officer in this case did not witness the out-of-court identification; he described, instead, that which a witness told him she had seen the day before. His testimony was, therefore, hearsay and inadmissible.

*Niblett* adopts a well recognized exception to the hearsay rule that allows evidence of an extra-judicial identification. *Id.* at 81, 225 S.E.2d at 394. This exception grew out of a movement to completely abandon the orthodox view of the hearsay rule where the declarant of an extra-judicial statement is present and subject to cross-examination. *McCormick on Evidence* § 251 (4th ed. 1992). This underlying movement has now itself been substantially rejected. *Id.* Fearing that litigants would substitute "carefully prepared" statements for testimony, modern authority limits this exception to prior inconsistent statements, prior consistent statements, and statements of identification. *Id.*

Substantial authority recognizes the admissibility of evidence of an extra-judicial identification, often without recognizing a hearsay problem. *Id.* at 122. Justification for the exception lies in the "unsatisfactory nature of court room identification and the safeguards which now surround staged out-of-court identifications." *Id.* at 122-23. Such justification does not, however, extend to a

witness's description to a police officer of what she saw the day before.

The witness's description of what she had seen the day before was an "out-of-court declaration or nonverbal assertion offered in court to prove the truth of the matter asserted." *Arnold v. Commonwealth*, 4 Va. App. 275, 280, 356 S.E.2d 847, 850 (1987). Thus, what she told the officer was hearsay, not subject to an exception, and inadmissible. Consequently, I would reverse the judgment of conviction and remand the proceeding for a new trial.