COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Frank and Senior Judge Hodges
Argued at Salem, Virginia


DANIEL JAVAN HAIRSTON

                                    MEMORANDUM OPINION* BY
v.    Record No. 2814-98-3          JUDGE WILLIAM H. HODGES
                                       DECEMBER 21, 1999
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                      Jonathan M. Apgar, Judge

             Steven P. Mahar Milani, Senior Assistant
             Public Defender, for appellant.

             H. Elizabeth Shaffer, Assistant Attorney
             General (Mark L. Earley, Attorney General, on
             brief), for appellee.


     Daniel Javan Hairston, appellant, appeals his convictions for

robbery, use of a firearm in the commission of a robbery, and

possession of a firearm as a convicted felon.  Appellant contends

(1) that the trial court erred by allowing Officer K. D. Garrett

to testify, over appellant's hearsay objection, regarding the

victim's description of the alleged robber, and (2) that the

circumstantial evidence was insufficient to support the

convictions.  For the following reasons, we find no error and

affirm the convictions.

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

## Facts

Regina Payne spent the evening of January 24, 1998 playing cards at a friend's house. Payne left around 12:30 a.m. on January 25, 1998 to find the person who was supposed to give her a ride home. Not seeing this person, Payne walked around the corner to call a cab from the pay phone. She noticed four men standing near a car arguing over a large bag of marijuana.

As she walked by the car, appellant approached her and pointed a "big gun" with a bright, shiny barrel directly in her face. Holding the gun only a half-inch from Payne's face, appellant demanded, "Bitch, what have you got?" Fearing that appellant would shoot her unless she cooperated, Payne gave him what was in her pockets -- $42 she won playing a game and her rent money of "two hundred and something."

Appellant took Payne's money and got into the car with the other three men. The car had four doors, looked green under the streetlights, and "it had shiny, shiny wheels on it . . . [that] looked like the gun." Payne called the police. Seeing the person who was supposed to have given her a ride, Payne got a ride away from the area, and then called the police again.

When the police officers arrived, Payne told them what had happened. She described appellant as a light-skinned black male with light facial hair, in his early twenties, wearing "a weird shaped hat and coat, and . . . that the bill of the hat was shaped different than most hats were shaped."

-

Thereafter, the police determined that Payne was wanted on an outstanding warrant. Payne got into the police car. Payne was talking to the officers as they drove when she suddenly saw the car in which appellant rode away from the robbery scene. Payne said, "Excuse me, but this is the car back here that we are looking for. . . . the guy in the back seat on the driver's side, that is him, that is the one." The four men were seated in the car the same way they were seated when they left the robbery scene. When the officers pulled up behind the car, Payne repeated, "The person that robbed me is sitting directly behind the driver in the back seat."

Officer Garrett approached the vehicle and asked appellant to get out of the car. Garrett found two bags of marijuana in appellant's pockets. Garrett ordered the other three men out of the car, and found a large amount of marijuana in the other back seat passenger's possession. A silver-colored .38 caliber five-shot revolver was in the seat where appellant had been sitting, hidden under a towel and pushed down into the seat.

Appellant was dressed in "bulky clothing" and a hat with a bill in front that was "pulled up . . . a kangaroo style hat," not like a "normal looking ball cap." None of the other three men wore an "oddly shaped hat."

I.

Appellant contends that the trial court erred by allowing Officer Garrett to testify regarding Payne's description of the

-

robber given just after the robbery occurred.  The court did not err in admitting Garrett's testimony concerning Payne's identification of appellant.

> Where the witness who identified the accused out-of-court is available as a witness, so as to afford the accused the rights of confrontation and cross-examination, the dangers sought to be avoided by the hearsay rule are absent and the testimony of a third person as to the extrajudicial identification has been held to be admissible. . . .
>
> An identification made by a victim or an eyewitness soon after a crime has been committed may be more objective and accurate and have greater probative value than one made later in court when unduly suggestive circumstances, if present, or the changed appearance of the defendant, might adversely affect the identifier's testimony. Moreover, the memory of a witness may fade . . . .  It is also not beyond the realm of possibility that an identifying witness may be inhibited by threat or intimidation from making a positive in-court identification.  Accordingly, we agree with the reasoning of those courts which have approved the broad admissibility of identification evidence.

Niblett v. Commonwealth, 217 Va. 76, 81-82, 225 S.E.2d 391, 394 (1976) (citations omitted); see Ellis v. Commonwealth, 18 Va. App. 340, 345-46, 444 S.E.2d 12, 15 (1994).

In Ellis, the witness positively identified Ellis the day after the crime occurred.  However, at the trial held nine months later, the witness made an equivocal in-court identification of Ellis, saying only that Ellis "looked like him."  See Ellis, 18 Va. App. at 346, 444 S.E.2d at 15.  This

-

Court held that the trial court did not err by allowing the police officer to testify regarding the witness' out-of-court identification of Ellis made the day after the crime.  See id.

In this case, after viewing appellant during the robbery and when he drove away from the scene, Payne made a positive identification of appellant twenty-five to thirty minutes later. While talking to the police officers, Payne identified the car appellant drove away in and identified appellant as the man in the back seat on the driver's side of the car.  At the trial held almost eight months later, Payne identified appellant as the man who robbed her at gunpoint.  However, during cross-examination, Payne became equivocal in her in-court identification.  Obviously, Payne was available for cross-examination.  We hold that pursuant to the aforementioned authorities, the trial court did not err by allowing Officer Garrett to testify about Payne's out-of-court identification of appellant made twenty-five to thirty minutes after the robbery.

                              II.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

So viewed, the evidence proved that appellant robbed Payne at gunpoint.  Appellant held the gun within a half-inch of

-

Payne's face and demanded, "Bitch, what have you got?"  Fearing that she would be shot if she refused to cooperate, Payne gave appellant the $242 she had in her pockets.  Appellant left the scene in the car with the three men.

Payne identified, for the police, the car in which appellant fled from the robbery scene.  Payne told the police that the person who robbed her was sitting in the back seat behind the driver.  That person was appellant.  The description Payne gave Garrett matched appellant's appearance that night.  In addition, Garrett found marijuana in appellant's possession and in another passenger's possession.  This fact is consistent with Payne's account that appellant and the three other men were arguing over marijuana just prior to the robbery.  Garrett also found a gun in the seat where appellant had been sitting before the car was stopped.  At trial, Payne said that this gun appeared to be the gun used in the robbery, and she identified appellant as the robber.

At trial, appellant's cousin testified that Payne had admitted to him that appellant had not robbed her.  According to appellant's cousin, Payne said "there is a guy in Roanoke that looks just like him," and that she "was going to get it straight" when she went to court.

The fact finder believed the Commonwealth's evidence and rejected appellant's evidence.  "The credibility of the witnesses and the weight accorded the evidence are matters

-

solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove that appellant was the person who committed the robbery and other charged offenses.

Affirmed.