## Saltkill v. Commonwealth.

October 25, 1949.

Robert Hubbard for appellant.

A. E. Funk, Attorney General, and Squire N. Williams, Assistant Attorney General, for appellee.

JUDGE CAMMACK—Reversing.

The appellant was indicted for rape and was convicted of carnally knowing his daughter. From a judgment sentencing him to five years' imprisonment, he prosecutes this appeal.

The appellant, his three daughters, Juanita, Kath-

leen and Doris, and his son, Arthur Lee, lived in a three-room house on the farm of Charles Beam(s), whereon he was a tenant farmer. The evidence in chief for the Commonwealth consisted solely of the testimony of the prosecuting witness, Juanita, now twenty years of age, her sister, Doris, now fourteen, and her brother, Arthur, now seventeen. According to the testimony of these witnesses, Juanita slept downstairs with her father while the other children slept upstairs. Juanita testified she was twelve years of age when she began sleeping with her father and that he had intercourse with her every night for a period of about a year. She testified that she became pregnant by her father and that her baby was born on September 19, 1941, at which time she was thirteen years of age. She further stated that she told no one who the father of her child was because of her father's threat to kill her if she did so. Doris testified that she did not tell anyone about Juanita's baby until 1946, when the appellant locked her and the baby, Dorothy, out of the house. At that time a Miss Hornback advised Doris to tell the authorities.

On cross examination, Juanita admitted sending an Easter card to her daughter in an envelope addressed to the daughter in care of Willie Sallee's rural mail box. She denied sealing the envelope or writing the note which was in it. This note contained a demand for $600 under a threat of prosecution of the father and the statement, "I told you Joe hornback was dorthy's dadie but I will sure lay it on you." While being interrogated concerning the note, she denied it was in her handwriting and voluntarily added, "old Mrs. Sallee wrote that I guess." After denying sealing the envelope, she again added, "that was easy for Mrs. Sallee to seal it." Juanita admitted knowing Hornback, but denied having intercourse with any man other than her father prior to the birth of her child. Arthur was shown a letter addressed to his father at Nashville, Tennessee, but denied the authorship of it. He further denied that he and Juanita had ever attempted to extort money from their father.

While the court refused to permit Doris or Arthur to state what they had told the county officials, the prosecution was permitted, over the objection of the defendant, to ask Doris if she told the county officials that

her father was the father of Juanita's child, to which she responded in the affirmative.

The appellant, sixty-two years of age, stated that he did not sleep with Juanita when she was twelve or thirteen years of age and that he at no time had sexual intercourse with her. He related his efforts to make his daughter behave properly and told of occasions when he had observed her with men, although she was but twelve years old . He identified the letter which was in the envelope with the Easter cards as being in the handwriting of Juanita and testified that the envelope was sealed when Sallee brought it to him at the jail. He identified the letter addressed to him at Nashville and signed by Arthur as being in the handwriting of his son. This letter also contained a demand for money under threat of prosecution.

Willie Sallee testified that the letter addressed to Dorothy was delivered to his mail box, that he took it to the appellant at the jail, that it was sealed when received and that, when opened, it contained both the card and the letter.

Witnesses attributed a good reputation for morality to the appellant and a bad reputation for veracity to Juanita.

Of the several grounds assigned as warranting a reversal of the judgment we will confine our attention to but two, which we think are well taken. These are the reference by innuendo to another crime with which the appellant was charged and the indirect admission of hearsay evidence after the court had once excluded it.

The necessary background must be given for a full understanding of the enormity of the prejudicial effect of these errors. While Juanita was living in Nashville, her little girl, Dorothy, and the appellant resided in the home of the Sallees. Mrs. Sallee had taken out insurance policies on her child and on Dorothy. Dorothy subsequently drowned and the appellant and Mrs. Sallee were accused of having murdered her to obtain the insurance money. The trial on this charge had been set for the same term of court and but two days after the trial on the instant charge. That the feeling of the community was high against the appellant and Mrs. Sallee is attested by the fact that the court on its own

motion summoned jurors from another county to try the murder charge against Mrs. Sallee. That jury acquitted Mrs. Sallee and the indictment against the appellant was then dismissed.

The Commonwealth's Attorney, in framing his questions, once inserted the words, "little Dorothy Saltkill, the girl that was murdered," and in another instance inserted the words, "the little girl, Dorothy, was the one that was drowned."

Here the appellant was charged with a crime so loathsome that its very accusation rendered it difficult to insure an absolutely impartial trial. Under such circumstances it was incumbent upon the officials of justice to exercise due diligence to guarantee to the accused that fairness of treatment to which he is entitled by our fundamental law. That the reference here was to the murder charge pending against the appellant and that such reference was highly inflammatory can not be doubted. Attempts to excuse these remarks on the ground that they were used solely for the purpose of identification are not satisfactory. If identification other than by name was necessary, the easiest and most logical way would have been by the words, "Dorothy, Juanita's little girl." Nor does the fact that the charge of murder was well known relieve this error of its prejudicial effect. The jurors had taken an oath to disregard any such knowledge and were, we have no doubt, attempting to abide by that oath. These references flaunted the charge of murder in the faces of the members of the jury. Such an act constitutes an invasion of constitutional rights and requires the reversal of a conviction obtained thereby. Maiden v. Commonwealth, 225 Ky. 671, 9 S. W. 2d 1018.

Although the court refused to permit the sister of the prosecuting witness to testify as to what she told the county officials, the following question and answer were permitted to go into the record over the objection of the appellant:

"Q. I will ask you if at that time you communicated or reported to the County Officials, Mr. Shelby Howard, the County Attorney, or anyone else the fact that your father, Joseph Edward Saltkill, was the father of Juanita's child?

"A. Yes, sir."

This witness was of course incompetent to testify as to who was the father of Juanita's child and the court very properly refused to permit her to do so directly. Baker v. Commonwealth, 184 Ky. 207, 211 S. W. 566. The indirection by which the testimony was received does not enhance its competency. It was hearsay or conclusion evidence which corroborated Juanita's accusation that the appellant fathered her child and was, of course, extremely prejudicial. Upon a retrial it will be excluded.

The only other phase of the case on which we will remark is the voluntary statements made by Juanita. In view of what has been said, the prejudicial effect of these statements becomes obvious and the court very correctly admonished the jury not to consider them. Under ordinary circumstances the stern admonition of the court serves to cure such spontaneous explanations on the part of witnesses. Here the harm was aggravated by other errors, but we are sure that the court upon retrial will caution the witnesses and a recurrence is doubtful.

The judgment is reversed for proceedings consistent with this opinion.