# Richmond

## Gene Anderson v. Commonwealth of Virginia.

January 16, 1950.

Record No. 3619.

Present, All the Justices.

The opinion states the case.

*E. W. Potts* and *Fred C. Parks*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Frederick T. Gray, Special Assistant,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

Gene Anderson, hereinafter called the defendant, was convicted by a jury of having seduced under promise of marriage, Mary Ellen Goff, an unmarried female of previous chaste character. Virginia Code, 1942 (Michie), section 4410. The verdict fixed his punishment at confinement in the penitentiary for two years. He assigns six errors alleged to have been committed by the trial court.

The first two assignments of error relate to the sufficiency of the evidence to support the verdict; the third to the admission and exclusion of evidence; the fourth to the granting of certain instructions; the fifth to the refusal of the trial court to set aside the verdict for misconduct of the jury; and the sixth to the refusal of the trial court to grant a new trial for after-discovered evidence.

This appeal is from a third trial of the case in the lower court. On the second trial, the jury were unable to agree on a verdict. The record does not disclose the result of the first trial, but we are told in the argument that the jury were unable to come to an agreement.

In the view we take of the case, it is only necessary to consider the assignment of error as to the granting of instruction number 2 hereinafter referred to, and to set out so much of the evidence as is pertinent thereto.

Both the defendant and the prosecutrix, Mary Ellen Goff, were approximately eighteen years of age at the time of the trial in the lower court. The evidence as to the offense charged and the circumstances attendant upon it is uncertain, indefinite and confusing. So much of it as bears upon the dates of specific happenings may be stated as follows:

In September, 1948, Mary Ellen Goff informed the Commonwealth's Attorney of Washington county, Virginia, that Gene Anderson seduced her in April, 1948, and November, 1947. A warrant was issued by the trial justice of the said county on September 8, 1948, charging Anderson with the seduction on the —— day of April, 1948. At the hearing of the warrant, it developed that the prosecutrix had a miscarriage in January, 1948, and the date in the warrant was then amended to charge the offense as of the —— day of November, 1947. The defendant was bound over to the grand jury, and at the next term of the grand jury, he was indicted for seducing the prosecutrix on the —— day of November, 1947.

At the time the warrant was issued in September, 1948, the prosecutrix was pregnant for a second time. She gave birth to a child in January, 1949.

The prosecutrix testified that Anderson began visiting her in August, or about three months prior to November, 1947; that he frequently came to her home, often ate meals, and stayed there overnight at least six times; and that he took her riding in his automobile, sometimes carried her to

a "show," and gave her a suit as a present at Christmas, 1947. Upon her direct examination this appears:

"Q. The indictment charges that he sometime in November 1947, seduced you?

"A. Yes, sir.

"Q. I want you to tell the Court when this happened, what he said to you and what happened?

"A. No answer.

"Q. When did this courtship begin, when first begin?

"A. In November.

\*　　\*　　\*　　\*　　\*　　\*　　\*

"Q. Where this act happen?

"A. At home.

\*　　\*　　\*　　\*　　\*　　\*　　\*

"Q. Did he ever say anything about marriage to you?

"A. Said he would marry me if I would do what I done.

"Q. How many times did he make you that promise?

"A. Lots of times.

"Q. Before you did it?

"A. Yes, sir."

She also testified that after she became pregnant, she went to a hospital at Saltville, Virginia, and had a miscarriage; that she did not tell her parents what was wrong with her; that afterwards she returned to her home; and that Anderson continued to visit her for five or six months until he was inducted into the United States Army.

Upon cross-examination of the prosecutrix, she made the following statements:

"Q. Can you remember what year it was you claim that Gene Anderson had intercourse with you the first time?

"A. November.

"Q. What year?

"A. 1947.

"Q. Are you sure it was 1947 or was it 1946?

"A. 1946.

"Q. 1946, and are you sure it was not 1948?

"A. It was in 1947, the first time.

"Q. And you say in November?

"A. Yes, sir.

"Q. What time in November was it?

"A. I can't remember what time."

She then stated that she went to the hospital in January, 1948, for the first time and was attended by Dr. J. A. Soyars.

Under further cross-examination this took place:

"Q. I believe I asked you a while ago if that miscarriage you had in January, 1948, was your first one?

"A. That was the first one.

"Q. Do you recall Dr. Epperson coming to see you?

"A. Yes, sir.

"Q. What was the matter with you?

"A. He didn't tell us what was the matter.

"Q. He didn't tell you?

"A. No, sir.

"Q. When did he come to see you?

"A. In November.

"Q. Of what year?

"A. 1947.

"Q. What was the matter with you when he came?

"A. I had a miscarriage in November, 1947."

On direct examination, Mrs. Annie Goff, the mother of the prosecutrix, testified as follows:

"Q. For how long a period of time, commencing when, did he (Gene Anderson) come to your home or visit your daughter?

"A. Something like two years ago.

"Q. Tell when it started.

"A. He started coming there long up in the summer in 1946.

"Q. This is 1949 now. Has it been two or three years ago?

"A. This will be three years.

"Q. Been going there two years in 1948 and began in the summer?

"A. Yes, sir.

"Q. How many visits did he make?

"A. He come often.

"Q. How often?

"A. Every night and every afternoon.

\* \* \* \* \* \* \*

"Q. Did Gene Anderson ever at any time come to you and say anything to you about marrying your daughter?

"A. Yes, he has asked me several times for her.

"Q. When was that?

"A. In the winter of 1948 and long up in the spring. In the fall of the year and spring he asked me several times for her.

\* \* \* \* \* \* \*

"Q. Then you said a while ago that in the winter of 1948 and the spring Gene Anderson asked you about marrying Mary Ellen. Is that right?

"A. He asked me two or three times for her.

"Q. You said in the winter of 1948 and up in the spring?

"A. It was. It was cold.

"Q. That was after Mary Ellen claims this thing happened?

"A. No, sir.

"Q. Was it after November, 1947?

"A. I don't remember the dates.

"Q. You don't remember the dates and you couldn't tell the jury what dates could you?

"A. I can't remember anything about dates.

\* \* \* \* \* \* \*

"Q. How long have you been married?

"A. Nineteen years in April.

"Q. How old are you?

"A. I will be forty the 20th of March.

"Q. How many children do you have?

"A. Four.

"Q. And you tell the Court and jury you don't know what a miscarriage is?

"A. No, sir, I don't."

During the time the defendant was in the Army, he wrote frequently to the prosecutrix. In four of his letters introduced in evidence, he addressed her in endearing terms, expressed his love for her, but never mentioned the subject of marriage. Late in the summer of 1948, he was ordered overseas, but was granted a furlough before his departure. In September of that year, he returned to his home to spend his furlough, and while there visited the prosecutrix. On the day he was to leave for overseas service, the warrant charging him with seduction was issued.

Dr. J. A. Soyars testified that he examined the prosecutrix on January 18, 1948, when she was a patient in the hospital, and diagnosed her trouble as an incomplete abortion, and that he told Mrs. Annie Goff what the trouble was.

Lloyd Collins testified that he had sexual intercourse with the prosecutrix in the spring of 1947. The prosecutrix admitted that she had had dates with Collins on a few occasions, but denied that she had ever had any improper relations with him.

A number of witnesses testified that the prosecutrix formerly bore a reputation of being a pure, chaste girl. Other witnesses testified that her reputation for chastity was bad.

The defendant did not testify. After the verdict was rendered, a juror in the case made an affidavit that, although the jury were instructed that the failure of the defendant to testify created no presumption against him, and was not a circumstance to be considered in determining his guilt or innocence, the failure of the defendant to testify was discussed and considered by the jury, and at least one of its members said that such failure showed he was guilty. He declared that defendant's failure to testify was considered as a determining factor in arriving at a verdict of guilty in the case. By reason of this affidavit and certain other affidavits tending to show the unchaste character of the prosecutrix, defendant moved the court to set aside the verdict and grant him a new trial. This motion the court overruled.

The court gave four instructions at the request of the Commonwealth and five for the defendant. Instruction number 2, given over the objection of the defendant, reads as follows:

"The Court instructs the jury that the exact time of the seduction is never material in a prosecution for this offense, and that, it is not therefore essential that the prosecutrix should be corroborated as to the exact date; it is only necessary to show that this prosecution was instituted within the statutory period in that the indictment upon which it is based was found within two years after the commission of the alleged offense."

As a general rule, time is not a material ingredient of the offense of seduction. All that is necessary in most cases is that the evidence in its entirety should show that the crime charged was committed within the period fixed by statute. *Shaver* v. *Commonwealth*, 151 Va. 545, 145 S. E. 377; 47 Am. Jur., Seduction, Sec. 61, p. 659; 57 C. J., Seduction, Sec. 176, p. 58; 24 R. C. L., Seduction, Sec. 58, p. 775.

In *Shaver* v. *Commonwealth, supra,* an instruction substantially similar to instruction number 2 was given. In that case the prosecutrix testified that the seduction took place on December 25, 1925. The accused presented evidence to prove an alibi. On the other hand, there was evidence that the accused was alone with the prosecutrix at her home on the night in question. It was held that, under the circumstances of the case, the court did not err in giving the instruction, and in refusing an instruction for the accused to the effect that it was necessary for the prosecutrix to prove that the offense was committed on the night of December 25, 1925.

In the present case, the circumstances are materially different. The evidence is replete with confusion as to the dates of the alleged seduction and the events leading up to it. The prosecutrix made no complaint until September, 1948, after she had become pregnant the second time. While she stated that her first pregnancy resulted in the miscar-

riage of January, 1948, when she was attended by Dr. Soyars, she also testified that she had a miscarriage in November, 1947, when she was visited by Dr. Epperson at her home. It is true that she further said that she first had intercourse with the defendant in November, 1947. The testimony of the mother of the prosecutrix is equally confused and contradictory as to dates and happenings.

The question of corroboration is close. The prosecutrix does not say, at any time, that she specifically relied on a promise of marriage. Her mother was vague and indefinite as to whether the question of marriage was discussed with her before or after the alleged offense. The letters of the defendant singularly omit any reference whatever to marriage. The confusion as to the dates of the alleged seduction and events leading up to it, and the conduct of the prosecutrix were proper subjects for the jury in the consideration of the credibility of the witnesses.

Proper instructions are highly important when there is a conflict in the evidence and the testimony of witnesses will have to be weighed in arriving at a verdict. An instruction which may be proper in one case may be improper in another. Each case must depend upon its own circumstances. The statement that "the exact time of the seduction is never material in a prosecution for this offense," is correct as an abstract principle of law. While fundamentally correct, it should not be given merely as a proposition of law. The facts of the case must, at all times, be considered.

Under the peculiar circumstances of this case and in view of the more or less indefinite nature of the evidence as to the circumstances leading up to the commission of the alleged offense, and the dates involved, we think instruction number 2 was much too broad and general. The instruction, in placing emphasis upon the principle that the exact time of seduction is not material, was calculated to take away from the jury a consideration of the conflicting statements of the prosecutrix and her mother as affecting their credibility.

We cannot say that the defendant has had the fair trial guaranteed to him under the law.

We find no error in the admission and rejection of evidence or in granting the remaining instructions in the case. The assignments of error dealing with alleged misconduct of the jury and after-discovered evidence present questions which are not likely to arise on a new trial, and it is deemed useless to prolong this opinion by discussing them.

The judgment will be reversed, the verdict of the jury set aside, and the case remanded for a new trial, not in conflict with the views herein expressed.

*Reversed and remanded.*