**Thomas E. REDD, Jr., Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 7, 1979.

Jack Emory Farley, Public Advocate, Erwin W. Lewis, Asst. Public Advocate, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Victor Fox, Asst. Atty. Gen., Frankfort, for appellee.

Before HOWARD, HOWERTON, and WINTERSHEIMER, JJ.

HOWERTON, Judge.

Redd appeals from a conviction for robbery in the first degree and a fifteen-year sentence imposed by the Christian Circuit Court. He alleges that he was denied a fair trial because of the admission of improper character evidence and because of improper identification procedures in and out of court.

Redd was supposedly observed in a Minit-Mart in Hopkinsville, Kentucky, on three occasions on August 10, 1978. The third time he entered the store, he fired one shot over an attendant's head. The attendants,

Donnie and Bonita Malone, entered a cooler for safety and set off an alarm. A Hopkinsville police detective investigated the incident, and the Malones immediately participated in the drawing of a composite sketch of the suspect with the help of another police officer.

The first identification by the Malones came when the detective separately showed them seven photographs he had compiled for another incident. The detective suspected Redd of being involved, and the group included his picture. Both attendants identified Redd as the person who had robbed them. The second identification of Redd occurred when the Malones saw him in a "hold-over" area when they attended a preliminary hearing.

At trial, the Commonwealth used only three witnesses—the Malones and the detective. The Malones testified that they recognized Redd from his "facial features" which included sideburns, a beard, and a mustache. The evidence indicated that the heaviness of the beard or goatee varied between the time of the robbery, the time the photograph was taken, the time Redd was viewed in the hold-over and the time of trial; but the Malones appeared certain at all times that Redd was the one who robbed them. The detective testified that the identification photographs were "mug shots taken from past incidents." Redd's objection was overruled. They were admitted into evidence. The detective also testified that the photo display presented to the Malones was a pack "taken from another armed robbery that I worked on earlier." Redd again objected and moved for a mistrial. Both were overruled.

Redd presented several alibi witnesses and also testified on his own behalf. During cross-examination, Redd voluntarily stated that he had been arrested for another charge and had served three years in the penitentiary. Redd gave this information while explaining why he had been out of work for a period of time and why it was difficult to obtain regular work.

When we review this case as a whole, we can only conclude that there is more than mere prosecutorial overkill. Some of the errors complained of were unnecessary, prejudicial, and reversible. Despite the apparent reliable and positive identification of Redd as the perpetrator of the offense, he did not receive a fair trial, and for the sake of the law, a new trial must be granted.

Redd alleges that the identification procedures at trial and prior to trial were improper. Redd also argues that improper character evidence was presented against him through the use at trial of "mug" shots and the admission of evidence regarding his prior crimes.

We find nothing reversible about the pretrial identification procedures. The Malones had seen Redd three times on the day of the robbery. They were able to create a composite likeness of him, and both of them positively identified him from photographs and an in-person viewing, both of which occurred shortly after the incident. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Some of the facts pertaining to the out-of-court identification were properly used to support the in-court identifications by the Malones. *Colbert v. Commonwealth*, Ky., 306 S.W.2d 825 (1957).

We must conclude from the record that the identifications were adequately free from influences and suggestions calculated to induce a fancied recognition. This is true despite the fact that the identifications came from "mug" shots, a police package for a similar crime, and a viewing in a "lockup." Each of these methods is sometimes necessary and unavoidable. Each is permissible, unless it is presented in such a manner as to be too suggestive. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1967). We find no reversible error in the fact that the witnesses viewed Redd in the "lockup" at a time prior to the appointment of counsel. *Shanks v. Commonwealth*, Ky.App., 575 S.W.2d 163 (1978). The "lockup" viewing was without suggestiveness, and it was apparently accidental. The identification occurred after arrest but before formal charges were made.

Based on our review of the record, we cannot say that any of the identifications were tainted. Except for the introduction of the mug shots into the evidence, and the detective's references to them, the in-court identification was untainted by any of the out-of-court identifications and was clearly permissible. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The in-court use of the mug shots and the references to them will be discussed later.

■ The remaining allegations of error relate to the improper character evidence. Part of the evidence regarding Redd's previous bad actions was elicited from Redd on cross-examination. The prosecutor was questioning Redd about whether he worked, and if not, how he lived and supported himself. This line of questioning was quite proper. If Redd was unemployed and desperate for money, it could indicate a motive for robbery. During this questioning, Redd voluntarily stated that he had served three years for receiving stolen property. This situation is distinguishable from *Swanger v. Commonwealth*, Ky., 255 S.W.2d 38 (1953), which held that the accused does not waive his right to object to the procurement of inadmissible evidence on cross-examination. In *Swanger*, the prosecutor specifically asked if the defendant had been indicted for certain other offenses. Here, the prosecutor did not ask about other crimes, but, without objection, Redd volunteered the information.

■ The prosecutor referred to Redd's lack of work and time in prison during his closing remarks. Standing alone, this does not constitute reversible error. Comments regarding Redd's lack of work and time in prison were taken from the evidence. The other comments complained about and objected to by Redd during closing argument were properly overruled and left to the conclusions of the jurors. As the United States Supreme Court so aptly wrote in *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974):

> Isolated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion not of evidence, do not reach the same proportions. Such arguments, like all closing arguments of counsel are seldom carefully constructed in *toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury sitting through lengthy exhortation will draw that meaning from the plethora of less damaging interpretations. *Id.*, at 646, 94 S.Ct. at 1873.

■ The error we find so unnecessary, inexcusable, unfair, and reversible relates to the introduction of improper character evidence through the use of mug shots and the references to them at trial. Generally, only where a defendant puts his good character in issue can the Commonwealth introduce evidence of a defendant's bad character. Lawson's *Kentucky Evidence Law Handbook*, § 2.10 (1976). *See also Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), and *Marshall v. Commonwealth*, Ky., 482 S.W.2d 765 (1972). None of this evidence can be justified under any exception to the rule. Exceptions are allowed for purposes of impeachment, or to show intent, motive, and guilty knowledge, or to show the involvement of a plan or scheme. *Pankey v. Commonwealth*, Ky., 485 S.W.2d 513 (1972), and *United States ex rel. Bleimehl v. Cannon*, 525 F.2d 414 (7th Cir., 1975).

We do not conclude that mug shots cannot be used in identification procedures, or even in court on some occasions, *Bleimehl, id.*; but when they are used, the implication is quite clear that the accused has previously been in the hands of the law. Mug shots are so familiar as to create a natural inference that the one photographed has a criminal record. *Barnes v. United States*, 124 U.S.App.D.C. 318, 365 F.2d 509 (D.C.Cir., 1966). The introduction of mug shots into evidence has likewise been condemned by

our Kentucky Court. *Roberts v. Commonwealth*, Ky., 350 S.W.2d 626 (1961).

The detective did not testify that Redd had been convicted of a prior crime, but he did testify that the pictures were mug shots taken from past incidents and that the pictures had been assembled for the investigation of another armed robbery. Such testimony goes beyond the creation of a mere inference. Furthermore, the fact that an innuendo relates only to a charge rather than to a conviction is irrelevant. *Saltkill v. Commonwealth*, 311 Ky. 296, 223 S.W.2d 1004 (1949).

A deliberate injection of a wholly irrelevant charge was held to be prejudicial error and reversible in *United States v. Blanton*, 520 F.2d 907 (6th Cir., 1975). In *Blanton, id.*, a police officer commented that Blanton was being investigated for an irrelevant robbery at the time the current offense was discovered and charged. The prosecution argued that the evidence of guilt was overwhelming and that the jury was already aware of the conviction for the robbery from other evidence. Both of these arguments failed. *Blanton* is similar to this case in that the evidence of guilt was strong, and there was other evidence of prior bad acts from Redd's own testimony.

In *Bleimehl, supra,* the opinion reads at 420:

> On balance, it must be admitted that the majority of courts tend to find prejudicial error in those situations where the mugshots themselves have actually been admitted into evidence. Most cases holding the other way involve situations which fall short of actual admission of the photos and only concern themselves with testimony referring to their existence.

*Bleimehl* was a habeas corpus proceeding reviewing the action of an Illinois court in allowing the admission into evidence of a book containing over 100 similar photographs. The defense was completely based on discrediting the victim's identification, and the evidence was allowed to show that not only was the defendant's picture identified from such a selection, but also the party identified was the one driving a vehicle leaving the scene of the crime, which vehicle was registered in the name of the one identified. Furthermore, as a habeas proceeding, the court was not so concerned with the state's rules of evidence, but with whether the defendant was provided a fair trial as guaranteed by the United States Constitution. The basic question was whether the resulting prejudice created by the admission of the mug book greatly outweighed its probative value to the jury. In *Bleimehl*, it did not, because it disposed of the identification issue and, with it, the case.

In the case at bar, it appears that the admission of Redd's mug shot added little probative value, but it did provide substantial and unnecessary prejudice. Most cases wrestling with this issue are direct appeals, but it is likely that Redd's conviction would be reversed in a habeas proceeding.

*United States v. Harrington*, 490 F.2d 487 (2d Cir., 1973), was a direct appeal wherein a conviction in a U.S. District Court was reversed because of the use of mug shots during the trial. Three standards were established to test the propriety of using mug shots. They are: (1) the prosecution must have a demonstrable need to introduce the photographs; (2) the photos themselves, if shown to the jury, must not imply that the defendant had a criminal record; and (3) the manner of their introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.

In *Harrington, supra,* a definite need for the photos existed, but the conviction was nevertheless reversed due to a failure to meet standards (2) and (3). The use of the mug shots at Redd's trial fails all three of the tests.

The *Harrington* opinion also suggested a method for preparing mug shots for use as evidence, when a need exists. It provides:

> [T]he preferable course of action when mug-shots are to be introduced would be to produce photographic duplicates of the mug-shots. These copies would lack any incriminating indicia—i. e., inscriptions or

identification numbers, and they would also avoid use of the juxtaposed full face and profile photographic display . . . 490 F.2d at 495.

Before any retrial of Redd, the prosecution would be well advised to consider the tests and standards established in *Harrington, supra,* and if photographs are deemed necessary for prosecuting the case, careful consideration should be given to the manner of introduction, the testimony regarding the photographs, and the preparation of the photographs for use, according to the suggestion just quoted.

Finally, the Commonwealth argues that objections were not made as to the prior criminal act aspect from the use of the photographs. The record indicates, however, that defense counsel made several general objections and specifically moved for a mistrial at the time the questions were asked and the evidence was presented. Perhaps more objections would have been fruitless and damaging in the minds of the jurors. We also observe that the defense counsel expressed an objection to the photographic evidence at a pretrial suppression hearing. Specific grounds must be given for an objection when requested by the trial court. RCr 9.22. In this case, no request was made, and a more specific objection was unnecessary.

For the foregoing reasons, the conviction of Redd is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

HOWARD, J., concurs.

WINTERSHEIMER, J., dissents.