### Richmond

ANTHONY MAURICE JOHNSON

v.

COMMONWEALTH OF VIRGINIA

No. 0113-85

Decided June 17, 1986

COUNSEL

John B. Mann (Levit & Mann, on brief), for appellant.

M. Katharine Spong, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**COLE, J.**—The appellant, Anthony Maurice Johnson, was tried and convicted by a jury on indictments charging him with abduction, robbery and two counts of the use of a firearm in the commission of a felony. He was sentenced to thirty-one years in the penitentiary in accordance with the jury's verdicts.

The issues raised by Johnson on appeal are: (1) whether the court erred in admitting in evidence an unmasked mug shot of Johnson which, it is argued, implicitly disclosed a prior criminal history; (2) whether the photographic spread of two sets of four pictures that was shown to the victim was impermissibly suggestive and prejudicial, thereby tainting the victim's in-court identification; (3) whether the Commonwealth's impeachment of a defense witness was improper; (4) whether the court erred in refusing to give the jury Instruction "B" regarding eyewitness testimony; (5) whether the court erred in refusing to give Instructions "A" and "C" regarding lesser included offenses; and (6) whether the court erred in admitting hearsay testimony regarding receipt by the police officer of information regarding

identification.

On February 16, 1984, David K. Redman was working the night shift at a Crown service station at 5737 Hull Street in Richmond, Virginia. At 4:30 a.m., a Dodge van, driven by Thomas Hawley, pulled into the well lighted station on the pretense of needing directions. After receiving directions, the passenger in the van, identified at trial as Johnson, displayed a sawed-off shotgun and demanded that Redman get in the van. Hawley, who was armed with a pistol, tied Redman's hands together and told him to lie face down in the van.

After ascertaining that Redman could not open the safe at the service station, Hawley and Johnson decided to "go see what [Redman had at his] house." Redman agreed to go with them because Johnson "had a sawed-off shotgun buried in the back of [his] neck." In route, Johnson took the wallet and keys out of Redman's pants pocket.

Once inside Redman's home, Hawley and Johnson told him to lie down on the living room floor. They took a television set, wall clock, two guitars, two amplifiers and a tape deck, all having a total value of $2,500, and left the house, leaving Redman tied up.

Identification of Johnson as the passenger in the vehicle with Hawley was the dominant issue in the case, since the defense was grounded on the theory of misidentification. It was incumbent upon the Commonwealth to prove beyond a reasonable doubt that Johnson committed the crimes charged.

To carry this burden, the Commonwealth called Redman as a witness. He identified Johnson as the passenger in the van who displayed the sawed-off shotgun. To enhance the identification, Detective W. H. Lightfoot was called as a witness. His testimony established that on the day of the crime, a large number of photographs were shown to Redman by the police, but he could not make an identification. Within forty-eight hours, the name of Johnson came to the attention of Detective Lightfoot, who arranged a series of eight photographs to be shown to Redman. Four of the photographs were black and white "mug shots" taken from police records showing front and side views of each. A photograph of Johnson was included in this group. The other four photographs were in color, and Hawley's photograph was included in this

group. When these pictures were shown to Redman at police headquarters six days after the offense, he readily identified both Johnson and Hawley.

## I.

The two groups of photographs previously described were admitted into evidence and were relevant to the issue of the credibility of Redman's in-court identification of Johnson. It was important to the Commonwealth to prove that at an earlier time, when suggestions of others could not have intervened to influence Redman's memory, that he recognized and identified Johnson as one of his assailants. Evidence of extrajudicial identifications has been approved by the Virginia Supreme Court. *Niblett v. Commonwealth*, 217 Va. 76, 83, 225 S.E.2d 391 (1976).

Johnson argues that *Niblett* does not control this case since the black and white photograph admitted at trial had written across the front of it in large letters, "Bureau of Police, Richmond, Virginia." Under this lettering there was a number followed by the date "10-29-83," an obvious reference to a prior crime since the crime in this case did not occur until February 16, 1984. He contends that the admission of this photograph and the action of the trial court in allowing it to be taken into the jury room were equivalent to permitting the Commonwealth to put on a witness to testify that Johnson had been convicted of a prior crime.

Although the issue of the admissibility of "mug shot" photographs appears to be one of first impression in Virginia, for the past twenty years this issue has perplexed other courts, both state and federal. One of the first cases to address the issue was *United States v. Harman*, 349 F.2d 316 (4th Cir. 1965). In *Harman*, agents of the Federal Alcohol and Tobacco Tax Division raided a still. One of the agents, Bodine, caught a fleeting glimpse of Harman before he escaped. At trial he positively identified him. Bodine testified that he had a "mug shot" of Harman in his assignment file to use for purposes of identification. The "mug shot" was introduced into evidence over the defendant's objection and was carried by the jurors to the jury room. The "mug shot" was a typical type with three poses and at the bottom was printed, "USPA 74040 11-5-53." This inscription established that the shot was taken at the United States Prison at Atlanta, gave the de-

fendant's prison number, and disclosed the date on which the picture was taken. The court described the impact of the picture as follows:

It is a matter of common knowledge that on the walls of all Post Offices there are pictures of wanted criminals, and almost all these pictures are of the same type, and very similar to, the pictures here in question. It would seem that the inscription on one of the pictures shows that it was taken at the United States Prison at Atlanta, gives the prisoner's number and the date on which the picture was taken. It is doubtful that the inscription on the picture conveyed all this information to the jury. However, the conclusion seems inescapable that the pictures, taken together with Bodine's testimony, must have conveyed to the jury the information that Harman had been previously convicted and had served a prison sentence.

\* \* \*

Since Harman did not testify or put his character in issue, of course, any evidence of a previous conviction would have been inadmissible. This case does not come within any exception to this general rule.

*Id.*

The court concluded that the introduction of the "mug shot" in evidence "was error, constituted serious prejudice to the cause of the defendant, and thus deprived him of a fair trial." *Id.*

In *Barnes v. United States*, 365 F.2d 509 (D.C. Cir. 1966), the prosecutor tendered a typical "mug shot" from a police department "rogues gallery." It consisted of two close-up shots of the accused's face, one full face and one profile. The photograph was given to the witness for examination and defense counsel objected to it. After a bench conference, some makeshift taping was placed over the exhibit. As altered, the exhibit was admitted in evidence. The court stated that:

[T]he double-shot picture, with front and profile shots alongside each other, is so familiar, from "wanted" posters in the post office, motion pictures and television, that the inference that the person involved has a criminal record, or has at least been in trouble with the police, is natural, perhaps auto-

matic. The rudimentary tape cover placed over the prison numbers on the photograph, and over the notations on the reverse side, neither disguised the nature of the picture nor avoided the prejudice. If anything, by emphasizing that something was being hidden, the steps taken here to disguise the nature of the picture may well have heightened the importance of the picture and the prejudice in the minds of the jury.

*Id.* at 510-11. The court found that the admission of the exhibit even as altered was improper and constituted reversible error. *Id.* at 512.

In *United States* v. *Reed*, 376 F.2d 226 (7th Cir. 1967), the appellant was prosecuted for bank robbery. His principal contention on appeal was that he was prejudiced by references to his criminal record and because his credibility was not subject to attack. A trooper testified that he went to the home of bank employees to show them two "mug shots." Upon being asked what a "mug shot" was, the trooper stated: "They are photographs of former inmates of the state prison." *Id.* at 227. During cross-examination, the trooper again stated the source of the photographs to be the state prison.

The court held that the testimony of the trooper was prejudicial to the appellant and reversed, stating:

We hold that the testimony with respect to the "mug shot" of Reed taken in prison vitiated his right to be presumed innocent until proven guilty and was prejudicial error. Repeated objections to this testimony were sustained, but the testimony remained. This testimony made the difference between the trial of a man presumptively innocent of any criminal wrongdoing and the trial of a known convict. His right not to take the stand in his own defense was substantially destroyed. His past record could not have been directly shown by the prosecution as part of its case to prove bad character since Reed's character was not in issue. The testimony did this indirectly.

The characterization of the photographs as "mug shot" taken in prison had the same effect as the penitentiary notations on photographs and the descriptive testimony concern-

ing them held to be prejudicial in *United States* v. *Harman*, 349 F.2d 316 (4th Cir. 1965).

*Id.* at 228.

In *United States* v. *Calarco*, 424 F.2d 657 (2d Cir.), *cert. denied*, 400 U.S. 824 (1970), a conspiracy case, appellants claimed that the trial court committed prejudicial error in permitting the government to introduce in evidence police file photographs of them. Each appellant's photograph was used as evidence against some other appellant, in connection with testimony that two of the co-conspirators evidenced "guilty consciences" when they denied having various other co-conspirators at the time of their arrest. *Id.* at 660.

Numbers in the corners of the file photographs were cut off and the backs of the pictures were covered with tape to block out written material. Nevertheless, the appellants contended that the effect of the introduction of several such photographs was to disclose to the jury that the appellants had previously been convicted of other crimes.

The court concluded under the facts and circumstances of this case that:

[I]ntroduction of these file photographs, as modified, was not likely to cause the jury to infer the existence of prior criminal convictions. It is much more likely that the jury assumed they were taken by the police when the appellants were arrested on the charges for which they were then being tried. The photographs in question, in the form in which jury saw them, did not include the overt reference to specific prison and dates of incarceration which were apparent in the "mug shots" whose introduction was held error in *United States* v. *Harman*, 349 F.2d 316 (4th Cir. 1965). Nor were they introduced to buttress and improperly color identification testimony naming the persons pictured as the perpetrators of the crimes for which they were then being tried, as was held to be the case in *Barnes v. United States*, 365 F.2d 509 (D.C. 1966).

*Id.* at 661 (citations omitted).

■ In *United States* v. *Harrington*, 490 F.2d 487 (2d Cir. 1973), the court reviewed the leading cases on the issue of admissibility of "mug shots." The court identified a pattern in the cases and concluded that the use of a "mug shot" would not constitute reversible error if three conditions were met:

(1) The Government must have a demonstrable need to introduce the photographs;
(2) The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and
(3) The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.

*Id.* at 494.

In *Harrington*, the court applied these standards to the facts of the case and held that since "[t]he whole debate over the propriety of the photographs took place in full view of the jury," and with the jury looking on the judge ordered the court clerk to mask the pictures, the manner of introduction of the photographs constituted reversible error. *Id.* at 495.

The tripartite standards of *Harrington* have been adopted by various state and federal courts. *United States* v. *Fosher*, 568 F.2d 207 (1st Cir. 1978); *Brookins* v. *State*, 354 A.2d 422 (Del. 1976); *State* v. *Thorne*, 41 Or. App. 583, 599 P.2d 1206 (1979).

In *Redd* v. *Commonwealth*, 591 S.W.2d 704 (Ky.Ct.App. 1979), Redd was convicted of robbery. The first identification came when the detective presented to the victims seven photographs that he had compiled. At trial, the two victims identified Redd as the robber. The detective testified that the photographs earlier shown to the victims were "mug shots taken from past incidents." *Id.* at 706. He also testified they were "taken from another armed robbery that I worked on earlier." *Id.* The court held this to be reversible error. The court also pointed out the three part test set fort in *United States* v. *Harrington*, and suggested to the prosecutor that before any retrial he consider the tests and standards established in *Harrington. Redd*, 591 S.W. 2d at 708-09.

Of like import is *Sloane* v. *State*, 437 So.2d 16 (Miss. 1983). The "mug shot" was full front and a profile of Sloane bearing the inscription, "Police Dept. Jackson, Miss." and the number "27163" upon it. The photo had been taken several years before the offense and portrayed a younger Sloane. The court cited the three prerequisites to admission set forth in *Harrington*, stated that the introduction of the photographs violated all three of them, and reversed. *Sloane,* 437 So. 2d at 18-19.

In search of standards that will be fair to both the Commonwealth and defendants, and at the same time will be practicable and understandable to both the trial courts and the bar, we conclude that the criteria established in *United States* v. *Harrington* are the most satisfactory that we have reviewed. Most of the federal and state courts that have had occasion to rule upon the subject in recent years have commented upon these standards with approval, and there has been virtually no criticism of them. We now apply these standards to the pending case.

The Commonwealth had a demonstrable need to introduce the photographs. Once Johnson indicated that his defense was misidentification, the Commonwealth had a need to enhance the identification evidence, even though the victim did make a positive identification. It may have been preferable to reserve evidence of the pretrial photographic identification until rebuttal, after the defense of misidentification was clearly known, but if it is known in advance that the defense intends to rely on misidentification it is not error for the Commonwealth to put this evidence in on direct examination. Therefore, the Commonwealth established a demonstrable need for the evidence, meeting the first prong of the *Harrington* test.

The "mug shots" were shown to the jury and had printed across the front of them, "Bureau of Police Richmond, Virginia 690614 10-29-83." One of them had an additional number—124546—written across the front of it.

It is inconceivable that some member of the jury would not know that these were "mug shots" and that the numbers and date indicated a prior criminal record. No attempt was made to cut off, tape or mask the improper material. It was there for the jury to see and to interpret. We hold that it was improper to admit these photographs in evidence and that the admission of Johnson's

"mug shot" with the inscription upon it constituted reversible error.

## II.

Johnson also contends that the photographic spread of two sets of four pictures each was impermissibly suggestive and prejudicial, thus tainting the witness's in-court identification. Since this objection was not made at trial, we will not hear it for the first time on appeal. Rule 5A:18.

## III.

The appellant argues that the Commonwealth's impeachment during the cross-examination of Bishop George Robinson, a defense witness, was improper and prejudicial. The following interrogatories took place over objection of defense counsel:

Q. Mr. Robinson, this is no disrespect, of course, but you have been in this court as a criminal defendant, have you not?
A. Yes, I have.
Q. In this very courtroom?
A. In this very courtroom.
Q. You have pled guilty to criminal charges, have you not?
A. I think if I remember back, I pled not guilty.
Q. You were found guilty?
A. Yes, sir. I was.

A witness may be impeached by proof of prior convictions. The rule with respect to witnesses other than the accused is that "the number and nature, but not the details, of the felony convictions of a witness . . . may be shown to the trier of fact." *Sadoski* v. *Commonwealth*, 219 Va. 1069, 1071, 254 S.E.2d 100, 101 (1979) (citing *Hummel* v. *Commonwealth*, 217 Va. 548, 550, 231 S.E.2d 216, 217 (1977)); C. Friend, *The Law of Evidence in Virginia* § 27 (2d ed. 1983).

Evidence of conviction of a misdemeanor involving moral turpitude also is admissible to impeach the credibility of a witness; evidence of conviction of a misdemeanor not involving moral turpitude is, however, inadmissible for such purpose. *Hackman* v.

*Commonwealth*, 220 Va. 710, 714, 261 S.E.2d 555, 559 (1980) (citing *Parr* v. *Commonwealth*, 198 Va. 721, 724, 96 S.E.2d 160, 163 (1957)).

It was improper to permit the Commonwealth's Attorney to question the witness about prior criminal convictions if they were not felonies or misdemeanors involving moral turpitude. Upon re-trial, impeachment of witnesses, other than the accused, should be restricted to proof of felony and misdemeanor convictions involv-ing moral turpitude, including evidence of the number and nature, but not the details of such convictions.

## IV.

The appellant contends that the trial court erred when it re-fused to grant Instruction B, which set forth a number of factors to be considered by the jury in considering the identification testi-mony of a witness. The instruction was taken from a ruling in the case of *United States* v. *Telfaire*, 469 F.2d 552 (D.C. Cir. 1972).

■ Instructions 1 and 2 were given to the jury to explain the presumption of innocence, the Commonwealth's burden of proof, and the jury's function in determining the credibility of the wit-nesses. Instruction B is redundant and inappropriate. "It is not desirable to multiply instructions" and such would have been the case if Instruction B had been given. *Ambrose* v. *Commonwealth*, 129 Va. 763, 766, 106 S.E. 348, 349 (1921). "A refusal to grant instructions covering principles of law upon which the jury has already been properly instructed is not error." *William* v. *Com-monwealth*, 228 Va. 347, 349, 323 S.E.2d 73, 74 (1984) (quoting *Asbury* v. *Commonwealth*, 211 Va. 101, 107, 175 S.E.2d 239, 243 (1970)). Instruction B, had it been given, would have had the ef-fect of emphasizing the testimony of the witnesses who made the identifications and in many respects the instruction was argumen-tative. We find no error in the refusal to grant Instruction B.

## V.

The appellant argues that the trial court erred when it refused to grant Instructions A and C.

Instruction 5 correctly stated the elements of abduction with in-tent to extort money for pecuniary gain. Instruction A would have

instructed the jury on the lesser included offense of abduction with intent to deprive of personal liberty. Instruction 9 correctly stated the elements of robbery. Instruction C would have instructed the jury on the lesser included offense of grand larceny.

Under the evidence in this case, Instructions A and C were properly refused since there was no evidence in the record to support either instruction. An instruction need not be given unless there is at least some evidence to support it. *Davis v. Commonwealth*, 214 Va. 681, 682, 204 S.E.2d 272, 273 (1974); *see Anderson* v. *Commonwealth*, 190 Va. 329, 337, 57 S.E.2d 89, 92 (1950). We find no error in the refusal of the trial court to grant Instructions A and C.

## VI.

The last claim made by Johnson is that the trial court erred when it admitted certain hearsay evidence. In order to prove identification, the Commonwealth attempted to show that the robber went by the name of "Buckwheat," and that Johnson was nicknamed "Buckwheat." However, its evidence failed to establish either premise. Unless the Commonwealth has more evidence to connect the identity of names with the identification of Johnson, all testimony concerning "Buckwheat" should be excluded upon retrial.

The judgment appealed from is reversed, and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Benton, J., and Duff, J., concurred.