COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Willis and Clements
Argued at Alexandria, Virginia


AL-KHALIQ MAYWEATHER, A/K/A
 KEITH MAYWEATHER
                                      MEMORANDUM OPINION[*] BY
v.    Record No. 0342-00-2          JUDGE JERE M. H. WILLIS, JR.
                                           MARCH 20, 2001
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF LANCASTER COUNTY
                    Joseph E. Spruill, Jr., Judge

              Charles J. McKerns, Jr. (McKerns & McKerns,
              on brief), for appellant.

              Kathleen B. Martin, Assistant Attorney
              General (Mark L. Earley, Attorney General, on
              brief), for appellee.


      On appeal from his conviction of three counts of

transporting one or more ounces of cocaine into the Commonwealth

with the intent to distribute, in violation of Code

§ 18.2-248.01, Al-Khaliq Mayweather contends that the trial

court erred (1) in admitting a photograph of him into evidence,

(2) in admitting evidence of cocaine and a firearm, and (3) in

denying his motion to strike because the evidence was

insufficient to support his convictions.  For the following

reasons, we reverse the judgment of the trial court.

_____

      * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

I.   BACKGROUND

In the summer of 1998, Lieutenant Ashby Allen, Jr., Chief Investigator for the Lancaster County Sheriff's Department, and Investigator Joan Webb began investigating Mayweather's involvement in the "Jersey Boys" drug distribution ring.  The "Jersey Boys" were suspected of trafficking in crack cocaine and distributing it in Lancaster County.  Pursuant to this investigation, Mayweather was arrested and charged with five counts of transporting one or more ounces of cocaine into the Commonwealth with the intent to distribute in violation of Code § 18.2-248.01.  Each count related to a different month, May, June, July, August, and September, 1998.

At trial, Faith Parker testified that the "Jersey Boys" -- Mayweather, Daniel Ford, Andre Noel, and Delvin Thornton -- stayed in her apartment for several months during the summer of 1998.  She testified that she knew the men distributed cocaine from her apartment and that Ford and Mayweather were the "ringleaders."  She stated that the men would store the cocaine in an attic outside her apartment and, when a buyer would call, Ford and Mayweather would use a razor blade or box cutter to cut the cocaine into smaller pieces for sale.  She identified a pager, razor blade box, and a digital scale as having been used by Mayweather.  Parker testified that, when the men would run out of cocaine, they would travel to New Jersey to "re-up."  She stated that, in the beginning, the men would "re-up" about once

-

a month, but when business increased, they began making the trip every two weeks.  Parker testified that she knew the substance being distributed was cocaine because she had "seen cocaine before" and the men referred to it as "cookies," which she knew was a slang term for cocaine.

Parker testified that in June of 1998, she accompanied the "Jersey Boys" to Newark, New Jersey, to pick up cocaine.  She said that the men dropped her off in Newark and proceeded to New York.  When they returned to Newark, they had cocaine, which she called "cookies."  She described these "cookies" as "[r]ound and about the size of a small personal pan pizza."  She said that on this trip, the men brought back "four" such "cookies," which they put in a bag with pepper to conceal the smell and hid it in a television set to transport back to Virginia.  She was shown a demonstrative model, made of dental stone by Lieutenant Allen, and she testified that it was the same size, color, and weight as the "cookies" she saw on the trip.

Parker further testified that in July of 1998, she went with Mayweather and the others to the bus station in Richmond, Virginia, to meet a girl who was transporting drugs from New Jersey.  Parker stated that she met the girl in the bus station bathroom, placed the cocaine in her pocket and carried it to the car where Mayweather, Ford and Noel were waiting.  She described the package as "pretty heavy" and estimated that it contained

-

three or four crumbled "cookies" that were of the same weight as the demonstrative model she was shown earlier.

Parker testified that after she had a baby on July 26, 1998, the "Jersey Boys" got their own house on Mary Ball Road. She said she would go over every other week to cook dinner for them. She said she never saw drugs on those premises, but the phone and pagers were "still ringing off the hook," and the men talked about having cocaine.

Parker testified that in September of 1998, she accompanied the "Jersey Boys" on another trip to New Jersey. On this occasion, she went with the men from New Jersey to New York, where they purchased five "cookies" and a "whitish" colored brick that they referred to as "raw." She testified that they paid approximately $8,000 for those "cookies," which were of the same size and weight as the demonstrative model shown to her earlier. She admitted that after the cocaine was packaged in her baby bag, she boarded a bus with it and brought it to Virginia to her house, where she hid it outside under her air conditioning vent. The next day, her landlord, Francis Norris, found and destroyed it.

Francis Norris testified that he rented a house to Parker in the summer of 1998. He testified that, while cutting the grass at the house, he discovered cocaine hidden beneath a board near the house. He said that he destroyed the cocaine and evicted Parker. She told him that the cocaine belonged to

-

Daniel Ford and that she was afraid of Ford and his associates. Norris testified that he telephoned Ford and asked whether the cocaine was his. Ford initially denied the cocaine belonged to him, but when Norris told him he had destroyed it, Ford said that it was "part of his job" and demanded payment for its value. Norris told the sheriff of his discovery.

Investigator Webb testified that on October 9, 1998, the police obtained an arrest warrant for Noel, one of the "Jersey Boys," on a failure to appear charge. They proceeded to the residence on Mary Ball Road to serve the warrant and searched the premises in the process. Mayweather was not present. The investigators recovered crack cocaine from an abandoned refrigerator in a shed on the property, on the stairway leading to the attic in the house, on the top kitchen shelf, and over the doorway to the shed. Investigator Webb estimated that the value of the cocaine seized totaled approximately $800. The officers also found a single-edge razor blade with off-white residue on it on top of the kitchen refrigerator, a box of approximately two hundred miniature Ziploc bags, an open package of single-edge razor blades (but no razor), and pagers. Under the floor vent in the dining room, they found a small digital scale and a semi-automatic handgun.

In a separate proceeding, Mayweather was tried for possession of the firearm and drugs located during the search and was acquitted.

-

Investigator Webb testified that, on the day Mayweather was arrested, he had on his person a learner's driving permit, which he had gotten the day before at the local DMV, his social security card, and a GTE telephone bill. The telephone bill displayed Mayweather's name and the telephone number of the house on Mary Ball Road. The bill reflected numerous calls to New Jersey.

Lieutenant Allen testified that, based upon Parker's description of the "cookies," he created a model of a "cookie" from dental stone, a substance used by the police to make castings of footprints and tool marks. This was the demonstrative model shown to Parker while she was testifying. Lieutenant Allen testified that he weighed the model, and determined its weight to be 5.3 ounces.

At the conclusion of the evidence, Mayweather moved to strike on the ground that the Commonwealth had failed to prove that the substance being transported was cocaine. As to the May and August charges, Mayweather's counsel argued further, "I think you have to resort to speculation to say that anything was transported during that period of time." The trial court denied the motion, and the jury found Mayweather guilty of the July, August, and September charges, but not guilty on the May and June charges.

-

## II.  MUG SHOTS

At trial, Parker was asked to identify photographs of the "Jersey Boys."  Mayweather objected to the admission of his photograph into evidence on the ground that it was a "mug shot," and he was therefore prejudiced by its introduction.  The photograph was unquestionably a "mug shot."

In Johnson v. Commonwealth, 2 Va. App. 447, 345 S.E.2d 303 (1986), we adopted a three-part test to determine the admissibility of "mug shots."  To be admissible, each of the following three conditions must be met:

> (1) The Government must have a demonstrable need to introduce the photographs;
>
> (2) The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and
>
> (3) The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.

Id. at 454, 345 S.E.2d at 307.

The Commonwealth had no demonstrable need to introduce the "mug shot" photograph of Mayweather.  His identity was unquestioned.  The prejudice resulting from the photograph's introduction outweighed any slight probative value.  Therefore, we conclude that the admission of the photograph was reversible error.

-

III.  ADMISSIBILITY OF COCAINE AND FIREARM

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988) (citation omitted).  "'[E]vidence is relevant if it tends to establish the proposition for which it is offered.'" Evans-Smith v. Commonwealth, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987) (citation omitted).  "'Upon finding that certain evidence is relevant, the trial court is then required to employ a balancing test to determine whether the prejudicial effect of the evidence sought to be admitted is greater than its probative value.'"  Braxton v. Commonwealth, 26 Va. App. 176, 186, 493 S.E.2d 688, 692 (1997) (citations omitted).  On appeal, a trial court's ruling that the probative value outweighs any incidental prejudice will be reversed only on a clear showing of an abuse of discretion.  See Ferrell v. Commonwealth, 11 Va. App. 380, 390, 399 S.E.2d 614, 620 (1990).

A.  EVIDENCE OF COCAINE

Mayweather contends that the trial court erroneously admitted into evidence cocaine for which he had previously been found not guilty of possessing.  We disagree.

We have held that,

> [w]here a course of criminal conduct is
> continuous and interwoven, consisting of a
> series of related crimes, the perpetrator

-

> has no right to have the evidence
> "sanitized" so as to deny the jury knowledge
> of all but the immediate crime for which he
> is on trial. The fact-finder is entitled to
> all of the relevant and connected facts,
> including those which followed the
> commission of the crime on trial, as well as
> those which preceded it; even though they
> may show the defendant guilty of other
> offenses. Evidence of such connected
> criminal conduct is often relevant to show
> motive, method, and intent.

Scott v. Commonwealth, 228 Va. 519, 526-27, 323 S.E.2d 572, 577 (1984) (citations omitted).

Here, the fact that cocaine was found at the house where Mayweather was living was relevant to the issue of Mayweather's motive, method, and intent in transporting cocaine into the Commonwealth. The Commonwealth produced direct evidence that linked Mayweather to the residence where the cocaine was discovered and circumstantial evidence permitted the inference that Mayweather was involved in a continuous and interwoven course of criminal conduct. Production of the cocaine corroborated Parker's testimony and was probative of the charges on trial. The trial court did not abuse its discretion in admitting the cocaine into evidence.

## B.  EVIDENCE OF A FIREARM

Mayweather also contends that the trial court erroneously admitted into evidence a firearm for which he had previously been acquitted of possessing. We agree.

-

The firearm, which was found in Mayweather's residence along with the cocaine and other drug paraphernalia, was irrelevant to the charges of transporting cocaine into the Commonwealth.  It did not corroborate Parker's testimony.  Parker did not mention the use of a firearm.  Its introduction into evidence prejudiced Mayweather.  The trial court erred in admitting the firearm into evidence.

## IV.  SUFFICIENCY OF THE EVIDENCE

When the sufficiency of the evidence is challenged on appeal, "we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

In challenging the sufficiency of the evidence to support his convictions, Mayweather argues that the Commonwealth failed to prove that the substance transported in July, August, and September was in fact cocaine.  With regard to the August charge, he also argues that the Commonwealth did not prove he was a criminal agent or that the substance transported weighed more than one ounce.  We find that the evidence was sufficient to prove that the substance transported in July and September was in fact cocaine and that the evidence was insufficient to support the August charge.

-

## A.  JULY AND SEPTEMBER CHARGES

Mayweather first contends that the Commonwealth failed to prove the substance transported in July, August, and September was in fact cocaine.  We disagree.

The Commonwealth never gained possession of the substances transported in July, August, or September, and therefore was unable to conduct laboratory analysis of those substances.  The only evidence establishing the nature of the substances was the following testimony of Parker:

[Commonwealth's attorney]:

Q.   Did you see drugs?

A.   Yes.

Q.   What kind of drugs?

A.   Cocaine.

> [Defense attorney]:  Judge, I'm going to object to that as a conclusion.

[Commonwealth's attorney]:

Q.   Why did you think it was cocaine?

A.   Because I've seen cocaine before.

Q.   What did they call it?

A.   Cookies.

Q.   What did that mean to you?

A.   It's a slang term for cocaine.

When a party raises an objection, it is his responsibility to obtain a ruling from the trial court.  If the party fails to do this, "there is no ruling for us to review on appeal."

-

Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 489 (1998).  See Taylor v. Commonwealth, 208 Va. 316, 324, 157 S.E.2d 185, 191 (1967) (finding that the defendant's objection was not preserved for appeal where he did not obtain a ruling from the court).  Because the trial court never ruled on Mayweather's objection to Parker's characterization of the substance as cocaine, there is no ruling for us to review.  After the objection, the Commonwealth laid a foundation for Parker to testify that the substance was cocaine.  Mayweather did not thereafter object.

"The nature of the illegal substance transferred need not be proved by direct evidence but can be demonstrated by circumstantial evidence."  Hill v. Commonwealth, 8 Va. App. 60, 63, 379 S.E.2d 134, 136 (1989) (en banc) (citations omitted).  The circumstantial evidence that may be considered includes:

> "[E]vidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that the transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence."

Id. (quoting United States v. Dolan, 544 F.2d 1219, 1221 (4th Cir. 1976)).

-

Parker testified that she recognized the substance as cocaine, because she had seen cocaine before. She testified that the "Jersey Boys," including Mayweather, called the cocaine by the slang term "cookies," which means "cocaine." She testified to specific incidents in July and September when the "Jersey Boys," including Mayweather, carried on their operation with secrecy and deviousness. She testified that the "Jersey Boys," including Mayweather, paid a high price in cash for the substance in September, when she accompanied them to New Jersey and New York. All of this direct and circumstantial evidence was sufficient to prove that the "Jersey Boys," including Mayweather, transported cocaine into the Commonwealth in July and September.

### B.  AUGUST CHARGE

The only evidence tending to prove Mayweather guilty of the August charge was the testimony of Parker that the "Jersey Boys" went to New Jersey to restock their cocaine supply at least once a month between May and September of 1998. She further testified that, as business increased, they went more frequently, as often as every two weeks. She recited no specific instance when she accompanied the men or saw the men transport cocaine into the Commonwealth during the month of August. This testimony was insufficient to establish Mayweather's guilt on the August charge. Therefore, Mayweather's conviction for transporting cocaine into the

-

Commonwealth between August 1 and August 31, 1998, will be reversed.  We need not address whether the substance alleged to have been transported during August weighed in excess of one ounce.

We reverse and remand Mayweather's convictions relating to July and September for retrial in accordance with this opinion, if the Commonwealth be so advised.  We reverse and order dismissed Mayweather's August conviction.

<u>Reversed and remanded in part,</u>
<u>reversed and dismissed in part.</u>

-